UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MPI TECH A/S,

           Plaintiff,

-against-                    15 Civ. 4891 (LGS) (DCF)

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

           Defendant.

---

**MEMORANDUM ON BEHALF OF MPI TECH A/S AND MARC J. GOLDSTEIN, ESQ.
IN OPPOSITION TO IBM'S MOTION FOR CONTEMPT PENALTIES AND
SANCTIONS**

## Table of Contents

Preliminary Statement............................................................................. 6

    I.       Summary of MPI's Position....................................................... 6

    II.     An Aside Concerning IBM's Statement of "Background".................... 8

SUMMARY OF FACTS SET FORTH IN THE DECLARATION OF MPI COUNSEL....11

ARGUMENT....................................................................................... 12

Point I: IBM Fails to Cite Authority Supporting The Relief It Seeks......................... 12

Point II:  The October 13 Order Construed the Protective OrdeR
As Allowing A New Lawsuit to Be Filed And Allowing MPI
Counsel's *Knowledge* of the Ricoh Documents to Be "Used" ................................ 13
In Making Strategic Decisions

Point III – The Denial of Related Case Treatment Implies A
Judgment That Orders in This Case Are Not Dispositive of 16 Civ. 9161.................... 21

Point IV: Relief Requested By IBM ........................................................... 22

CONCLUSION..................................................................................... 23

## Table of Authorities

### Cases

Ecopetrol S.A. v. Offshore Exploration & Production LLC,

172 F.Supp.3d 691 (S.D.N.Y. 2016)……………………………………  21

EEOC v Morgan Stanley & Co.,

132 F. Supp.2d 146 (S.D.N.Y. 2000) …………………………………  17

Gucci America, Inc. v. Weixing Li,

768 F.3d 122 (2d Cir. 2014)………………………………………..  20

In re Biovail Corp. Securities Litigation,

247 F.R.D. 69 (S.D.N.Y. 2007) …………………………………………  13,14,16,22

In re Dual-Deck Video Cassette Recorder Antitrust Litigation,

10 F.3d 693 (9th Cir. 1993)…………………………………………  15

In re Reserve Fund Sec. and Derivative Litigation,

2009 WL 10465018 (S.D.N.Y. Aug. 26, 2009)………………………  15,16,22

Independent Living Aids, Inc. v. Maxi-Aids, Inc.,

349 F. Supp.2d 509 (E.D.N.Y. 2004)…………………………………  21

King v. Allied Vision,

65 F.3d 1051 (2d Cir. 1995)…………………………………………  21

Levin v. Tibet Holding Corp.,

277 F.3d 243 (2d Cir. 2002) …………………………………………  20,21

On Command Video Corp. v. LodgeNet Entertainment Corp.,

   976 F. Supp. 917 (N.D. Cal. 1997)………………………………………… 16,22


Panix Promotions, Ltd. v. Lewis,

2004 WL 421937 (S.D.N.Y. March 5, 2004)…………………………... 20

Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.,

2016 WL 3349162 (S.D.N.Y. June 14, 2016)…………………………... 17

Sexton v Lecavalier,

11 F.Supp.3d 439 (S.D.N.Y. 2014)………………………………………... 21

S. New England Tel. Co. v. Global NAPs Inc.,

624 F.3d 123 (2d Cir. 2010)……………………………………………… 21

Stone Eagle Services, Inc. v. Gilman,

2013 WL 6008209 (N.D. Tex. Nov. 13, 2013)…………………………... 15,16,22

Wolters Kluwer Fin. Servs. v. Scivantage,

2007 WL 1498114 (S.D.N.Y. May 23, 2007)…………………………… 14,16,22

**Court Rules**

SDNY Rule for Division of Business 13(a)(1) …………………………… 21

## Preliminary Statement

### I.      Summary of MPI's Position

Plaintiff MPI Tech A/S ("MPI") and Putative Contemnor Marc J. Goldstein ("MPI Counsel") (hereinafter collectively "MPI", unless otherwise noted), submit this memorandum in opposition to the motion filed by IBM on January 9, 2017 (Dkt. 250, corrective re-filing at Dkt. 257) seeking imposition of contempt penalties and discovery sanctions. IBM filed its motion without knowing what MPI Counsel did, in the drafting of the Complaint in 16 Civ. 9161 (the "Complaint", filed November 25, 2016), with regard to documents produced by Ricoh USA ("Ricoh") [1]in this case.  IBM, which under settled law has the burden of proving an act of contempt by clear and convincing evidence, but having no information about how the Ricoh documents may have been invoked by MPI Counsel, necessarily asserts that the filing of the Complaint is an act in violation of the clear and unambiguous mandates of the Protective Order use restriction (Dkt 44) and this Court's October 13 Order (Dkt 224 )[2], and that a clearly-prohibited use of Discovery Material as defined in paragraph 1 of the Protective Order, i.e. certain of the Ricoh documents, is to be presumed by the Court, by reason of the fact that MPI counsel is in possession of those documents and has asserted in prior proceedings in this action that some of them contain information considered by MPI Counsel to be supportive of claims of the type asserted in the Complaint, *unless* MPI and MPI Counsel can demonstrate that the Complaint was drafted with reference to information derived from sources other than the use-restricted Ricoh-produced documents.

---

[1] Ricoh is the successor in interest to the original producing party that was the recipient of a subpoena *duces tecum* signed by MPI Counsel, Ricoh Print Production Solutions LLC.

[2] This motion concerns what the Court reasonably could be understood to have held in its October 13 Order. It is telling that in the inflammatory introduction to its brief IBM does not mention that Order once. Distortion ("*over and over*" ??) and inflammatory rhetoric, not analysis, are "aggressive" (www.kobrekim.com) IBM counsel's métier.

IBM's assumption is correct that MPI Counsel, in drafting the Complaint – in regard to the material allegations of conduct by the Defendants alleged to constitute copyright infringement and trade secrets misappropriation – did not rely on information sources other than the Ricoh documents and did rely on MPI Counsel's knowledge of existence of, and recollection of the contents of, certain of the Ricoh documents. But this admission does not sustain IBM's burden of proof, because MPI Counsel's *knowledge* is not Discovery Material under the Protective Order, the October 13 Order states that such *knowledge* may be used to make strategic decisions about new claims, and the Protective Order and the October 13 Order do not go so far as to state in a clear and unambiguous way that MPI could not bring a lawsuit for copyright infringement and trade secrets misappropriation in which the Complaint and the decision to file it were informed by MPI Counsel's *knowledge* of the contents of the Ricoh documents obtained in March-May 2015 during MPI Counsel's review of those documents for potential use in this action. To the contrary, the October 13 Order appeared to MPI Counsel to have said quite the opposite:

> MPI is not, however, barred under the Protective Order from pursuing copyright or related claims against IBM, Ricoh, and others. MPI may pursue such claims, and, consistent with applicable law, it may conduct any pre-complaint investigation it desires -- so long as it does not use the discovery materials obtained in this matter in violation of the Protective Order... [N]othing in the Protective Order immunizes IBM, Ricoh, and third parties from suit.

In this Memorandum we examine what else the Court did say, and the cases on which the Court placed reliance. We do this for the reason, among others, that there are many things the Court could have said and did not: most critically the Court did not say that the *knowledge* MPI Counsel had already gained from review of the Ricoh documents in and for this case could not provide the underlying -- but unstated in the Complaint -- factual basis from a Rule 11 perspective for material

allegations of wrongful conduct by the Defendants in a copyright/trade secret lawsuit, such that the filing of such a lawsuit by MPI would violate the Protective Order, no matter what the Complaint's allegations stated, unless MPI found some other sources of information. And the Court did not state that MPI Counsel's reliance on the *knowledge* gained in this fashion would be a use of Discovery Material in violation of the Protective Order without regard to whether the Complaint included, or not, the substance, or any summary of, or any reference to the existence of, the Ricoh documents.

This we believe to be the correct interpretation of the October 13 Order as applied to the conduct at issue. But IBM's motion should be denied – both as to contempt and discovery sanctions -- even if the Court intended a concept of prohibited "use" that encompasses MPI Counsel's conduct in drafting and filing the Complaint, and even if the Court intended that conceive of "Discovery Material" as including MPI Counsel's unpublished recollection of their contents, because the Court's Order is far from being clear and unambiguous in articulating such a broad concept of Discovery Material and prohibited use, and MPI Counsel's interpretation is a reasonable reading of the text of the Order and the case law relied upon in the Order.

## II.    An Aside Concerning IBM's Statement of "Background"[3]

---

[3] Not in the Background section, but properly treated here, is what is perhaps the most indiscriminate act of over-aggressive advocacy in IBM's submission. IBM claims MPI *"has pursued its copyright complaint in an effort to leverage a settlement by imposing the burdens of a new litigation on IBM"* and as evidence of this presents an e mail in which MPI proposed an agreement to arbitrate as a means to remove the new case from public view. (IBM Mem. at 11). What MPI Counsel's email reflected was a desire of MPI to privatize the dispute through arbitration, thus serving many of the core objectives of the Protective Order and also streamlining the procedure. For IBM to find bad faith or any conceivable impropriety in a proposal to arbitrate the dispute only speaks to IBM's unbridled zeal to win, if not on the law and facts, then on the basis of gratuitous derogatory attacks on MPI Counsel.

1. MPI did not "*request court approval to violate the Protective Order.*" (IBM Mem. at 2). Only the hands of "*aggressive*" IBM counsel (this self-laudatory mantle is featured at the home page of www.kobrekim.com, last visited Jan. 26, 2017) could so wrongly recast the record.

2. Use restrictions in Protective Orders are to be construed in context. Quoting convenient snippets of text, as aggressive IBM counsel does, is a shopworn trick to distort and avoid the context. We are mindful that the Court in the October 13 Order stated that avoidance of competitive use and public disclosure are not the only procedural policy goals served by the use restriction, but the Court acknowledged that this is the main purpose, and clearly did not state that such use restrictions have as a primary or important purpose the creation of a civil liability immunity-in-exchange-for-discovery bargain.[4]

3. The motion MPI filed on April 4, 2016 (Dkt 125) was made, as directed by the Court at a status conference, to contest under Rule 26 the assertions of privilege and inadvertent waiver that IBM had made concerning three email messages. Only in the over-aggressive rhetoric of IBM counsel did that motion (IBM Mem. at 3) "*seek[] to use three privileged documents that were inadvertently*

---

[4] In IBM's rhetoric Paragraph 2 of the Protective Order has morphed from "Use Restriction" to "Use Prohibition." The relevant text of the Protective Order (Dkt. 44) is:

> WHEREAS, Plaintiff MPI Tech A/S ("MPI") and Defendant International Business Machines Corporation...anticipate that discovery in the above captioned action (the "Action") is likely to involve the disclosure of confidential or sensitive commercial, financial or business information; and
> WHEREAS, the Parties desire to enter into an agreement ("Protective Order") pursuant to Rule 26 (c) of the Federal Rules of Civil Procedure to protect such confidential or sensitive commercial, financial and/or business information;
> It is hereby STIPULATED, AGREED and ORDERED as follows: ....
> (2) All Discovery Material [**as defined in para. 1**] produced in the Action shall be used only for the purposes of prosecuting or defending the Action, and shall not be disclosed to any person except in accordance with the terms hereof. The attorneys of record for the Parties and all other persons receiving Discovery Material governed by the Protective Order shall take all reasonable steps to ensure that Discovery Material governed by the Protective Order is (i) used only for the purposes specified herein, and (ii) disclosed only to authorized persons. In particular, Discovery Material may not be used for any commercial or business purpose.

*produced by IBM as the basis to bring a new action against IBM and others for copyright*

*infringement and other claims.*" IBM's contortion builds at least three layers of untruth into a single

sentence: (1) whether the documents were privileged and not produced advertently were disputed

issues on the motion, not foundations of it, (2) what uses MPI might make of the documents if they

were not privileged, or if privilege had been waived, was not *the subject of the motion,* i.e. was not

any aspect of the relief requested by MPI, and (3) while the motion was pending, MPI on several

occasions wrote to the Court to state that based on documents in the Ricoh production it was

considering whether the propose an amended complaint or, if the Court preferred not to have new

claims introduced in the action at its stage of advancement, to proceed instead by a Related Case.

4. MPI Counsel reviewed Ricoh's document production beginning shortly after it was made on

February 29, 2016 and MPI Counsel eventually saved certain of the documents as PDF attachments

to self-addressed emails that noted the potential relevance of the documents to

copyright/misappropriation claims, this being accomplished on and about May 2, 2016 (Marc J.

Goldstein Decl. ¶7). Whereas the privilege/waiver motion was not resolved until May 16, 2016

(Dkt 163), aggressive IBM counsel's narrative that MPI Counsel's review of the Ricoh documents

was "*underterred (by the May 16 Order) and in violation of Fed. R. Civ. P. 26(b)(5)(B)...*" is

factually and legally baseless. We have travelled this rhetorical road before, and IBM has never

produced a single piece of authority supporting the notion that the review of Ricoh's document

production *at any time* violated Rule 26. MPI was preparing to oppose an IBM motion for

summary judgment on the entire case, and moreover was in possession of a 21-day pre-Rule 11

motion demand letter and draft Notice of Rule 11 Motion from IBM's aggressive counsel insisting

upon the withdrawal of the entire case with prejudice (a motion evidently threatened just as an

aggressive tactic; it was never filed). So the review of Ricoh's production for evidence supporting

the existing causes of action was mandatory as a matter of professional responsibility. (Marc J. Goldstein Decl. ¶4-5).

5. What MPI Counsel found in the Ricoh production concerning copyright and misappropriation goes well beyond "*a few documents obliquely referencing copyrights...*" (IBM Mem. at 3). How does IBM within the bounds of applicable lawyer conduct rules make such a statement unless it backs it up with a sworn declaration that it has reviewed the entire Ricoh production and is reporting upon its findings? What MPI Counsel found in the Ricoh production concerning copyright and misappropriation, up to May 2, 2016, is filed as an under-seal Exhibit 1 to the Marc J. Goldstein Declaration.

**SUMMARY OF FACTS SET FORTH IN THE DECLARATION OF MPI COUNSEL**

MPI Counsel reviewed the Ricoh production pursuant to subpoena in this case between early March and early May 2016. (Marc J. Goldstein Decl. ¶ 3). MPI Counsel identified certain Ricoh documents as containing information indicating possible copyright infringement and/or misappropriation of MPI trade secrets. (Id. ¶ 6). MPI Counsel on and about May 2, 2016 made self-addressed emails to which such Ricoh documents were annexed, without notes, but with Subject headings indicating the actual and potential claims or defenses to which the documents were relevant. This included emails connoting that the annexed documents were pertinent to copyright infringement and trade secret misappropriation. (Id. ¶7). After May-June 2016, MPI counsel did not look at any of the Ricoh documents or his May 2, 2016 self-addressed emails until January 10-11, 2017, and thus did not look at these materials in connection with drafting the 16cv9161 Complaint in November 2016. (Id. ¶ 8). MPI Counsel told IBM counsel on December 9, 2016 that MPI intends to subpoena in 16cv9161 the Ricoh documents containing information

indicating possible copyright infringement and/or misappropriation of MPI trade secrets, to have them produced under a Protective Order corresponding to the Protective Order in this case, and once the documents are produced to rely upon them when called upon to demonstrate the factual basis for the 16cv9161 Complaint. MPI Counsel told IBM Counsel on December 9, 2016 that he believed this course of action was compliant with the Protective Order and the October 13 Order and referred IBM Counsel to a particular portion of the October 13 Order concerning MPI's right to bring a lawsuit against IBM, Ricoh and other third parties. (Id. ¶ 13).

## ARGUMENT

### Point I: IBM Fails to Cite Authority Supporting The Relief It Seeks

IBM's Memorandum dutifully refers to cases setting forth the standards governing a motion for contempt sanctions. But the IBM Memorandum contains no analysis of the case law cited in the October 13 Order, which law is the framework for understanding what the Court intended and what MPI Counsel reasonably understood. Such analysis is necessary because the Court did not address directly the question of whether "Discovery Material" includes counsel's un-republished knowledge of the contents of the Discovery Material or whether "use" of "Discovery Material" includes MPI Counsel's reliance without republication on his knowledge of the contents of the Discovery Material in drafting a Complaint. And the IBM Memorandum cites no case law that could be considered as precedent for drawing the conclusions that IBM asks the Court to draw on this motions. Specifically these notable deficiencies in IBM's Memorandum include:

1. IBM cites no cases in which the term "use" in a Protective Order "use restriction" was construed by the Court – other than the October 13 Order itself.

2. IBM cites no cases in which the use prohibited by a Protective Order use restriction was held to include the commencement of a new lawsuit in which the Complaint makes no reference to the use-restricted documents, but where the contents of the use-restricted documents as recalled by the filing attorney would furnish a factual basis from a Rule 11 perspective for the Complaint's allegations.

3. IBM cites no cases in which a party or an attorney was held in contempt of court for filing a Complaint, where the contemptuous act consisted of the attorney recalling the contents of use-restricted Discovery Material previously examined for purposes of the prosecution of the action in which the Discovery Material was produced, and concluding that such Discovery Material could furnish evidentiary support for the allegations in the Complaint.

4. IBM cites no cases where a party or its attorney were sanctioned or held in contempt for violation of a Protective Order "use restriction", where the conduct constituting the violation did not include publication of the use-restricted documents or portions thereof or some references to their contents.

**Point II:  The October 13 Order Construed the Protective Order As Allowing A New Lawsuit to Be Filed And Allowing MPI Counsel's _Knowledge_ of the Ricoh Documents to Be "Used" In Making Strategic Decisions**

This Court in the October 13 Order did not treat exhaustively what types of conduct would constitute prohibited use of the Ricoh documents. In particular the Court did not hold that any new lawsuit filed by MPI based on its counsel's knowledge of the contents of the Ricoh documents, no matter how pleaded, could not lawfully be filed.

Concerning how a new lawsuit _would_ violate the Protective Order by reason of use of the use-restricted Ricoh documents, the Court cited at p. 6 of the Order two cases as illustrations: In re Biovail Corp. Securities Litigation, 247 F.R.D. 69 (S.D.N.Y. 2007) (Judge Owen) and Wolters

13

Kluwer Fin. Servs. v. Scivantage, 2007 WL 1498114 (S.D.N.Y. May 23, 2007) (Judge Baer). IBM does not cite either case.

In *Biovail*, the party's offending use of documents obtained from a non-party in discovery governed by a protective order use restriction entailed (1) *"put[ting] in its allegations [in a new lawsuit] some of the documents and information flowing therefrom..."* (emphasis supplied), and (2) apparently sharing the documents with other counsel involved on the party's behalf in the new lawsuit, and with counsel in a new shareholder class action that parroted allegations in the party's own new lawsuit[5].

The *Wolters Kluwer* case did not involve whether the filing of a new lawsuit violated a protective order use restriction; the question in *Wolters Kluwer* was whether the Court would grant a motion to allow deposition transcripts covered by the use restriction to be used in (i) the lawsuit re-filed in the District of Massachusetts after voluntary dismissal without prejudice of the action in this District in which the protective order had been entered and the depositions had been taken, and (ii) a related action in the Southern District of New York. The use that had already been made in the re-filed action in Massachusetts, and which was directly at issue, entailed annexing the deposition transcripts as exhibits to a motion for emergency discovery in the re-filed action in Massachusetts. 2007 WL 1498114 at *4. Judge Baer denied the motion of *Wolters Kluwer* to modify the protective order, a motion that sought to condone the offending conduct retroactively.

---

[5] The latter point is only inferable from Judge Owen's direction that Biovail retrieve the documents from counsel with whom they had been shared

The cases then discussed by the Court at page 9 of the Order also entailed direct republication use of the use-restricted discovery material. In re Reserve Fund Sec. and Derivative Litigation, 2009 WL 10465018 (S.D.N.Y. Aug. 26, 2009) (Judge Gardephe) is cited at p. 9 of the October 13 Order in support of the position that filing discovery material in a related action would violate the protective order use restriction, and thus the violation found in *Reserve Fund* corresponds to the violation found by implication in *Wolters Kluwer* -- but obviously such republication in the second lawsuit has not happened here, and this undisputed fact placed the Court in the position of having to order MPI Counsel to make a Declaration about his conduct in preparing the new Complaint because the use of Discovery Material is not evidence on the face of it. This Court also cited Stone Eagle Services, Inc. v. Gilman, 2013 WL 6008209 (N.D. Tex. Nov. 13, 2013), yet another case where the violative use of use-restricted documents entailed publication of the documents in another court. In *Stone Eagle*, Plaintiff sought to place confidential discovery material on the public docket in a pending related state court action, and the Defendant sought and obtained a protective order to prevent such publication in the state court public docket.

The October 13 Order places some lesser reliance, in a footnote mainly designed to distinguish case law cited by MPI, on two cases in other jurisdictions in which use restriction issues relating to the contents of a Complaint in a second lawsuit were at issue. (Order at 8 n. 4). In In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693 (9th Cir. 1993), the Complaint in the second action "*averred that the defendants had entered into agreements 'described more fully in the statement of specific facts relied upon by Go-Video, Inc., in opposition to motions of defendants for summary judgment on antitrust issues'.*" 10 F.3d at 694 (emphasis supplied). In other words, the complaint in the second lawsuit cross-referenced a specific submission on the

15

record in the first lawsuit where the contents of documents subject to the protective order could be found. MPI's Complaint in 16 Civ. 9161 does no such thing. Further, this Court in its footnote treatment of *Dual-Deck* did not disagree with the 9th Circuit's holding that this was a "technical violation" of the protective order use restriction and not contempt. In <u>On Command Video Corp.</u> <u>v. LodgeNet Entertainment Corp.</u>, 976 F. Supp. 917 (N.D. Cal. 1997), as revealed in the Magistrate Judge's report annexed to the District Court's opinion, the Plaintiff included in the state court complaint the names of persons and allegations of specific wrongful acts on specific dates, which information had been obtained in use-restricted discovery proceedings in the federal action. 976 F. Supp. at 927. The Magistrate Judge found that there was no act of contempt *inter alia* because the information published in the state court complaint was not itself confidential or proprietary information. The District Court reversed. Thus the "use" of use-restricted discovery material that the District Judge, overruling the Magistrate Judge, held to constitute contempt in *On Command Video* clearly included republication in the state court complaint of specific facts that had been obtained by Plaintiff in use-restricted discovery proceedings in the District Court. *On Command Video* is as much a republication case as *Biovail*, *Wolters Kluwer*, *Reserve Fund*, and *Stone Eagle*. MPI Counsel made reasonable effort at compliance with a reasonable reading of the October 13 Order and the Protective Order by declining to publish in the Complaint any facts derived from the Ricoh documents.[6]

---

[6] This Court in calling the Protective Order in *On Command Video* "similarly worded," did not expressly take account of material differences. As Judge Armstrong held: "*The Court notes that the Protective Order does not expressly state its purpose. ... Plaintiff asserts that the purpose is to protect commercial secrets. (Mag. Rep. at 10). Unfortunately for plaintiff, there are no terms in the Protective Order to corroborate such an interpretation.*" 976 F. Supp. at 921. (emphasis supplied). Thus the protective order use restriction in *On Command Video* was materially different from the one in this case. The restriction there was not framed and presaged textually, as this one is, by language referring to a purpose to protect confidential business information from public disclosure or competitive use. Restriction of litigation use was, in *On Command Video*, the singular objective of the use restriction, not, as here, a means to an end. Perhaps it was in recognition of this difference that this Court did not make *On Command Video* a central element of its analysis.

The October 13 Order expressly states at p. 12 that "*MPI is not, however, barred by the Protective Order from pursuing copyright or related claims against IBM, Ricoh, and others. MPI may pursue such claims, and, consistent with applicable law, it may conduct any pre-Complaint investigation it desires -- so long as it does not use the discovery materials obtained in this matter in violation of the Protective Order.*" (emphasis supplied). The Court concluded the passage in which the foregoing statement is made this a confirmation of that statement (at p. 13): "*[N]othing in the Protective Order immunizes IBM, Ricoh, and third parties from suit...*" (emphasis supplied). Further, based on the Court's chosen quotation from EEOC v Morgan Stanley & Co., 132 F. Supp.2d 146 at 158 (S.D.N.Y. 2000) (Judge Lynch)[7] and its parenthetical summary of the holding in Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co., 2016 WL 3349162 (S.D.N.Y. June 14, 2016) (Judge Moses), MPI Counsel could and did reasonably discern a distinction made in the Order between use of the discovery materials themselves (*i.e.* republication *in haec verba* or in substance) and "use" no of the Discovery Material but of the *knowledge* derived from permitted review of the Discovery Material, i.e. Ricoh documents, in this action. (The quotation marks around the word "use" and the italicization of the word *knowledge* appear in the October 13 Order in the Court's parenthetical quotation from the *EEOC v. Morgan Stanley* case, and we track that punctuation here to track its perceived meaning). Now surely IBM will answer that this passage in the October 13 Order concludes with the sentence: "*As even IBM concedes, "MPI is free to bring any valid, good faith claim that is not based upon information produced in discovery in this case."* But that was not a clear and unambiguous directive that MPI could not do what it has now

---

[7] Oct. 13 Order at 12-13, quoting from *EEOC v. Morgan Stanley*: "'If a lawyer, ~~educated~~ educated about [Defendant's] employment practices by reviewing documents in one case, 'uses' the *knowledge* to make better discovery demands in another case, or otherwise to improve his or her strategic decisions in such other matter, that is a normal consequence of the discovery process" (emphasis added)'".

done. First, to construe it to mean that the Court's holding went no further than the scope of IBM's concession would negate all of the analysis in the Order that preceded it and that has been discussed in this memorandum. Second the phrase "based upon" was not elaborated as to its meaning, and therefore was and is to be construed in light of the case law and discussion in the Order that preceded it, which demonstrates that the Court was relying on case law in which use-restricted material had been republished in another action. Third, the decision to file a second lawsuit is a "'strategic decision [] in such other matter'", the Order does not states that it is not such a strategic decision, and so the filing of the second lawsuit without publication therein of any of the information contained in Discovery Material was reasonably construed by MPI as "'a normal consequence of the discovery process'" when read in tandem with this Court's declarative statements that MPI could sue IBM and third parties and that they were not immunized from such suit.

MPI Counsel, having reasonably understood the October 13 Order to draw a distinction between use of the contents of use-restricted documents in the pleading of a new lawsuit, and "use" of counsel's *knowledge* of such documents, properly obtained in this action, to make strategic decisions in regard to new litigation, observed and acted upon that perceived distinction in preparing the Complaint in 16 Civ. 9161:

1) The Ricoh documents are not annexed to, quoted in, summarized in, or referenced in the Complaint.

2) The Complaint does not mention the source of its factual basis specifically, indeed it does not even allege that *any* documents produced in this case underlie its allegations. [8]

3) MPI Counsel did not show any Ricoh documents to MPI or to anyone else, and did not discuss their contents substantively with MPI or with anyone else. (Marc J. Goldstein Decl. ¶3)

4) MPI Counsel did not look at the Ricoh documents or at any internal notes concerning their contents (none exist) in connection with drafting the Complaint. MPI Counsel instead relied on his *knowledge* – recollection -- of the contents of the Ricoh documents derived from the review of the documents for purposes of this action between March 2016 (when they were first produced) and May 2016. (Marc J. Goldstein Decl. ¶¶ 9-11).

5) Thus the preparation of the Complaint entailed a careful effort by MPI Counsel to comply with MPI Counsel's reasonable understanding of the October 13 Order and the use restriction in the Protective Order as construed therein. If this effort by MPI Counsel was not sufficient to prevent a violation of the Protective Order because MPI Counsel misunderstood what the Court intended in the October 13 Order, still there should be neither contempt nor sanction because the October 13 Order stated that MPI could sue IBM and third parties for copyright infringement, that they were not immunized from such suit, and the Order's reasoning strongly indicated that the uses that the use restriction prohibited in regard to a new lawsuit consisted of republication (whether *in haec verba* or by summary or paraphrase) of the contents of the use-restricted documents, and that such prohibited use

---

[8] This was not meant as a deceptive dodge of the fact that MPI Counsel had knowledge of the Ricoh documents, but only as a measure to comply with the protective order use restriction by avoiding any language in the Complaint that would arguably constitute republication.

was distinguishable from "use" of the *knowledge* of the use-restricted documents to make "strategic decisions" (such as whether to commence suit) in regard to new litigation.

To summarize: IBM fails to show by clear and convincing evidence a violation of a clear an unambiguous order because (1) the commencement of a lawsuit against IBM and Crawford was not flatly prohibited but was conditionally held permissible; (2) the Court's reasoning and application of authority distinguished between use of the Ricoh documents and counsel's application of knowledge of the Ricoh documents to make strategic decisions in regard to new litigation; (3) the court did not unambiguously place in the category of prohibited use the filing of a Complaint whose allegations of misconduct are motivated by counsel's knowledge of the Ricoh documents acquired in a review of the documents in this action 6-8 months prior to drafting the Complaint, and (4) MPI counsel's conduct either falls within the expressly permitted category of applying knowledge of use-restricted documents to make strategic decisions about new litigation, or that was a sufficiently plausible reading of the October 13 Order that MPI Counsel should be seen as having made a serious and reasonable attempt to advance the client's interests in compliance with the October 13 Order and the Protective Order. *See* Gucci America, Inc. v. Weixing Li, 768 F.3d 122, 143 (2d Cir. 2014) ("[U]nless the parties can ascertain from the four corners of the order *precisely what acts are forbidden*, the order cannot form the basis for contempt") (IBM Mem. at 5, emphasis supplied).[9]

---

[9]

> Although the alleged contemnor's action need not be willful . . . . as the party seeking to hold the other in civil contempt, the Plaintiffs must produce 'clear and convincing' evidence that the Defendants violated a clear and unambiguous order of the Court. *See* Levin v. Tibet Holding Corp., 277 F.3d 243, 250 (2d Cir. 2002) ('[T]he clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation has occurred.'.... *See also* Panix Promotions, Ltd. v. Lewis, No. 01 Civ. 2709, 2004 WL 421937, at *2 (S.D.N.Y. March 5, 2004).

**Point III – The Denial of Related Case Treatment Implies A Judgment That Orders in This Case Are Not Dispositive of 16 Civ. 9161**

This Court declined to accept this case as a Related Case under SDNY Rule for Division of Business 13(a)(1) (ECF Docket in 16 Civ. 9161 at 12/05/2016). MPI cannot know precisely what factors influenced the Court to make that determination, but we are guided by the criteria set forth in Division of Business Rule 13. Denial of Related Case treatment can be understood as reflecting a judgment that *"the interests of justice and efficiency [would not] be served,"* and parties are to understand that the determination to accept or decline Related Case treatment is made after considering *"whether absent a determination of relatedness there would be a substantial duplication of effort and expense, delay, or undue burden on the Court, parties or witnesses."* Division of Business Rule 13(a)(1)(d) (emphasis supplied).

Given the volume of activity in this case concerning the bearing of the Protective Order on MPI's ability to assert the causes of action now asserted, it seems fair to assume that the relationship between the new Complaint on the one hand and the Protective Order and October 13 Order, on the other, was considered by the Court in the context of the Related Case application. If this Court

---

Independent Living Aids, Inc. v. Maxi-Aids, Inc., 349 F. Supp.2d 509, 515 (E.D.N.Y. 2004).[9]

The Second Circuit in the *Levin* case (cited in the quoted excerpt from the *Independent Living* case stated not only that "'[t]he party seeking to hold another in civil contempt nears the burden of proof to establish the offense by clear and convincing evidence," 277 F.3d at 250, but also held that "under New York law, all ambiguity in a judicial mandate will be construed strictly to the benefit of the party facing allegations of contempt" *Id.* Further, "[c]ivil contempt is a 'potent weapon,' which courts should not employ 'where there is fair ground of doubt as to the wrongfulness of the defendant's conduct. King v. Allied Vision, 65 F.3d 1051, 1058 (2d Cir. 1995)." Ecopetrol S.A. v. Offshore Exploration & Production LLC, 172 F.Supp.3d 691, 698 (S.D.N.Y. 2016) (Judge Koeltl). *Accord*, Sexton v Lecavalier, 11 F.Supp.3d 439, 442 (S.D.N.Y. 2014 (Judge Torres), *quoting from* S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144-45 (2d Cir. 2010).

believed that those Orders barred commencement of 16 Civ. 9161, logically the Court could have accepted 16 Civ. 9161 as a Related Case, and dismissed it *sua sponte* or ordered MPI to show cause why it should not be dismissed. The Court having instead declined to treat 16 Civ 9161 as a Related Case, it is inferable the Court did not consider that Orders in this case were potentially dispositive.[10]

**Point IV: Relief Requested By IBM**

As there has been no violation of the Protective Order as Construed by the October 13 Order, there should be no contempt penalties nor Discovery sanctions.

Further, as to contempt, IBM does not cite a single case where the filing of a second lawsuit using use-restricted discovery material from a prior action was sanctioned by entry of an order in the prior action requiring withdrawal of the second lawsuit. That relief was not granted in the cases relied on in the October 13 Order (*e.g. Biovail, Wolters Kluwer, Reserve Fund, Stone Eagle* -- or even *On Command Video*). And the cases cited by IBM at pp. 12-13 of its Memorandum, while they do involved orders that lawsuits be withdrawn, are not based on violations of Protective Order use restrictions.[11]

---

[10] IBM appears to have arrived quite late at the conclusion that the Protective Order and October 13 Order are dispositive of 16 Civ. 9161 – six weeks having elapsed from the filing of the Complaint to the filing of IBM's motion, consuming all but the last two weeks of the extended period granted to IBM by Judge Forrest to answer or move to dismiss in 16 Civ. 9161. IBM did not write to this Court in support of Related Case treatment, as it could have, to argue that this Court should accept the new case and swiftly dismiss it. IBM also did not write to Judge Forrest to ask that 16 Civ. 9161 be stayed pending an intended contempt and sanctions application to this Court – although *after* the filing of this motion IBM counsel has suggested it may ask Judge Forrest for such a stay.

[11] Only one of the four cases here cited by IBM, *Hussein*, was a contempt case.

As to attorney fees as a contempt or Rule 37 discovery sanction, there is no basis for such an award because MPI Counsel acted upon a correct or at the very least reasonable interpretation of the October 13 Order and the Protective Order use restriction as construed therein, and acted prudently and at significant expense to obtain the Court's declaratory guidance before filing any claims by pleading amendment or new litigation. Moreover MPI Counsel's ethical duties to MPI to advance its substantive rights zealously within the bounds of the law militate against such punishment; the effect of imposing such sanctions is not to regulate how discovery is conducted but to intimidate parties to refrain from asserting meritorious claims. That is a malign and dangerous use of the sanctions power under Rule 37. In all events: attorney fees for litigation activity in 16 Civ. 9161 are a matter for Judge Forrest, and attorney fees for the prior declaratory relief proceeding are not warranted because those proceedings were pursued by MPI in good faith and MPI has sought in good faith to conduct itself in compliance with the October 13 Order.

## Conclusion

IBM's motion should be denied in all respects.

Dated: January 26, 2017

Respectfully submitted,

MARC J. GOLDSTEIN LITIGATION & ARBITRATION CHAMBERS

By: _Marc J. Goldstein_

    Marc J. Goldstein (MG-8701)
One Rockefeller Plaza, 11th Floor
New York, New York 10020
(212) 799-8605

Counsel for Plaintiff MPI Tech A/S and Putative Contemnor Marc J. Goldstein

23