UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

MPI TECH A/S,                                    :
                                                 :
                          Plaintiff,             :
                                                 :
            -against-                            :
                                                 :
INTERNATIONAL BUSINESS MACHINES                  :
CORPORATION,                                     :
                                                 :
                          Defendant.             :
------------------------------------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  2/06/2017
```

15 Civ. 4891 (LGS) (DCF)

**ORDER AND OPINION**

LORNA G. SCHOFIELD, District Judge:

Plaintiff MPI Tech A/S ("MPI") brings this action against Defendant International

Business Machines Corporation ("IBM") seeking declaratory and equitable relief and money

damages relating to the payment of royalties arising from a software vending relationship

between the parties.  Plaintiff asserts claims for breach of contract, unjust enrichment,

declaratory judgment and breach of the duty of good faith and fair dealing.  Two matters are

before the Court -- IBM's motion for summary judgment on all of MPI's claims, and MPI's

objection to Magistrate Judge Debra C. Freeman's November 14, 2016, Order denying MPI's

motion to amend its pleadings to add copyright infringement claims (the "Order").  For the

following reasons, IBM's motion is granted, and MPI's objection is overruled.

## I.      BACKGROUND

### A.      Factual Allegations

The following facts are taken from the parties' submissions and are undisputed unless

otherwise indicated.

MPI manufactures and licenses proprietary document management software.  IBM

manufactures and sells mainframe computers and related software and services.  This dispute

concerns an agreement pursuant to which MPI provided IBM with software that allowed files stored on IBM mainframe computers to be printed on certain printers and copiers.

In 1990, IBM and MPI's predecessor, i-data Inc. ("i-data"), entered into a Master Work Agreement (the "MWA").  Section 1.1 of the MWA states that it "shall be implemented through one or more Statements of Work" and "provides basic terms applicable to all such Statements of Work."  The Statement of Work relevant to this dispute was referred to as "SOW-P."  SOW-P was executed by IBM and i-data in March 2000.  MPI became a party to the MWA and SOW-P when MPI acquired i-data in 2002.

SOW-P governs MPI's provision of software known as "transforms."  The transforms convert data from the format native to IBM's mainframe computers to one of the formats used by printers and copiers.  Pursuant to SOW-P, the transforms, "includ[ing] Code, associated Documentation, Externals, Error Corrections and Enhancements," are "Licensed Work" which IBM may incorporate into its "Products" and offer to its customers.  In return, SOW-P provides that MPI shall receive royalties for a maximum of ten years after "GA" of the Product.  GA stands for "General Availability" and means "the time when a product and all ship group materials are available for shipment from IBM to all customers."  Prior to 2010, there were two GA dates under SOW-P:  June 2000, for what the parties refer to as "Version 1" of the transforms, and June 2005, for "Version 2."

In 2009, one of IBM's customers requested an update to the transforms that would allow it to print multiple copies of a document such that each copy would be horizontally offset from the others in the printer tray for easier handling, a functionality called "jogging."  MPI initially offered to provide jogging on the condition that IBM would eliminate the ten-year limit on royalties, but IBM refused.

In March 2010, MPI raised a concern that Version 2 updates had been delivered to some Version 1 customers.  If this concern was well-founded, MPI noted in its email to IBM, it "would explain the lack of movement, over the past years, in migration from Version 1 to 2 and the resultant anomalies in Royalties."  IBM responded that some Version 2 updates "were made available for the 'old' [Version 1] Transform" because a number of customer service requests remained open past the "End of Service" date for Version 1, which was August 2, 2006.  IBM reassured MPI that, with one agreed upon exception in 2009, other Version 1 customers "have not received new product features in the new [Version 2] Transform product via the service stream" updates.  IBM subsequently conducted an investigation and determined that only two Version 1 customers had downloaded the Version 2 updates.  According to MPI, IBM never disclosed to MPI how many Version 1 customers obtained Version 2 updates.

As a result of a telephone conversation between the parties on May 27, 2010, and assurances made by IBM, MPI dropped its demand to eliminate the ten-year limit on royalties and agreed to provide jogging at a cost of €10,000, which it did the next day on May 28, 2010. The parties dispute the intended scope of this jogging update.  MPI asserts that it meant to provide jogging only for the customer who had requested it, and IBM disputes that limitation. IBM released an update to its transform software including the jogging feature on December 14, 2010.

On June 30, 2010, the parties executed Amendment 4 to SOW-P ("Amendment 4"), which memorialized the jogging update for "Cost: EUR10,000" due "May 28, 2010."  Among the other terms included in Amendment 4 was the parties' agreement "to make best efforts to work on releasing a new Product at the same time as the next z/OS system release."

On July 23, 2010, the parties executed an Interim Negotiation Letter Agreement ("INLA") to govern their discussions regarding a potential new product.  The INLA provided: "Either company can end these discussions at any time, for any reason, and without liability to the other.  Each company remains free to negotiate or enter into similar relationships with others."

On December 20, 2010, after the parties failed to reach agreement on a new product, IBM notified MPI that IBM would allow SOW-P to expire on December 31, 2010.  IBM also announced that, as of January 1, 2011, it would stop selling MPI's Version 2 product.  IBM continued to pay MPI royalties on SOW-P until July 1, 2015, the expiration of the ten-year royalty period for Version 2 under SOW-P.  IBM engaged Crawford Technologies, Inc. ("Crawford") as its new transforms technology vendor, based on discussions IBM had commenced with Crawford in early 2010.  IBM released the next version of the z/OS system in September 2011.

**B.   Procedural History**

MPI commenced this action on June 23, 2015.  The deadline to file amended pleadings or join additional parties was September 1, 2015.  MPI amended its pleadings once before the September 1 deadline and twice afterward.  The operative complaint is the Third Amended Complaint (hereafter, the "Complaint").  Discovery was completed on April 15, 2016, and IBM moved for summary judgment on May 20, 2016.

On May 23, 2016, MPI moved for an order either (a) clarifying that the protective order in this action should be construed to allow MPI to use confidential discovery material to assert new claims in this action or a new action or (b) modifying the protective order to allow MPI to make such use of the confidential discovery material.  On October 13, 2016, Judge Freeman

denied MPI's motion in its entirety.  Judge Freeman concluded that the plain language of the protective order prohibits MPI's proposed use of the confidential discovery material and that it would be unfair to modify the protective order because IBM had reasonably relied on it in producing documents to MPI.

On October 24, 2016, MPI moved for leave to amend the Complaint and file a fourth amended complaint adding copyright infringement claims and, apparently, new defendants based on the confidential discovery material.  On November 14, 2016, Judge Freeman denied MPI's motion.  MPI filed the present objection to the Order.

## II.  LEGAL STANDARD

### A.  Summary Judgment

The standard for summary judgment is well established.  Summary judgment is appropriate where the record before the Court shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Wright v. New York State Dep't of Corrections*, 831 F.3d 64, 72 (2d Cir. 2016).  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense such as the statute of limitations."  *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

 "The moving party bears the burden of establishing the absence of any genuine issue of material fact."  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citation omitted).  Not every disputed factual issue is material in light of the substantive law that governs the case.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5

However, the party opposing summary judgment must come forward with materials setting forth specific facts showing that there is a genuine issue of material fact; he cannot defeat summary judgment by relying on the allegations in the complaint, conclusory statements or mere assertions that affidavits supporting the motion are not credible.  *See Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).  Furthermore, a non-movant must produce more than "a scintilla of evidence" in support of his position.  *See Anderson*, 477 U.S. at 252.  Essentially, at the summary judgment stage, a nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful."  *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (citations omitted).

### B.  Objections to Denial of Motion to Amend Complaint

For objections to a magistrate judge's ruling on nondispositive matters, Rule 72(a) provides that district courts must "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A); *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007).  When reviewing a magistrate judge's order regarding a dispositive motion, a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).

Judge Freeman's denial of Plaintiff's motion to amend is treated as a nondispositive matter.  In *Fielding*, the Second Circuit stated in dicta that "a district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for [a] decision," subject to review under the "clearly erroneous" standard.  510 F.3d at 178 (internal quotation marks omitted).  Since *Fielding*, the courts in this district appear to have consistently applied the "clearly erroneous" standard to evaluate the denial of leave to amend by a magistrate

judge, regardless of whether the denial foreclosed potential claims.  *See, e.g.*, *Levy v. Young Adult Inst., Inc*., No. 13 Civ. 2861, 2016 WL 4402038, at *1–2  (S.D.N.Y. Aug. 18, 2016) (overruling objection to denial of leave to amend to add counterclaims); *Tardif v. City of New York*, No. 13 Civ. 4056, 2016 WL 2343861, at *1 (S.D.N.Y. May 3, 2016) (overruling objection to denial of leave to amend to add, among other things, new claims); *Sokol Holdings, Inc. v. BMB Munai, Inc*., No. 05 Civ. 3749, 2009 WL 3467756, at *1 (S.D.N.Y. Oct. 28, 2009) (same).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).  A ruling is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Lifeguard Licensing Corp. v. Ann Arbor T-shirt Co., LLC*, No. 15 Civ. 8459, 2016 WL 5936887, at *1 (S.D.N.Y. Oct. 11, 2016) (internal quotation marks and citation omitted). "It is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion."  *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007) (internal quotation marks omitted).

## III.    DISCUSSION

### A.    Four of MPI's Claims are Time Barred

Four of MPI's five claims are barred by the contractual limitations period set forth in the MWA because the claims accrued more than three years before MPI commenced this action.

Under New York law, contract claims ordinarily are governed by a six-year statute of limitations.[1] C.P.L.R. § 213(2); *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 967 N.E.2d 1187, 1190 (N.Y. 2012). Unjust enrichment claims are governed by a six-year statute of limitations where the plaintiff seeks an equitable remedy, *see Loengard v. Santa Fe Indus., Inc.*, 514 N.E.2d 113, 114–15 (N.Y. 1987) (unjust enrichment claim from breach of fiduciary obligation is an equitable claim governed by the six-year statute of limitations) (citing C.P.L.R. § 213(1)), and by a three-year statute of limitations where the plaintiff seeks monetary damages, *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 272 (N.Y. 2009) (citing C.P.L.R. § 214(4)). The statute of limitations is an affirmative defense and usually will be enforced unless equitable estoppel applies to prevent the defendant from asserting it. *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006). The New York Court of Appeals has held that equitable estoppel will apply "where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action" and plaintiff "demonstrate[s] reasonable reliance on the defendant's misrepresentations." *Id.* (citing *Simcuski v. Saeli*, 377 N.E.2d 713, 716 (N.Y. 1978)).

Parties may agree to "modif[y] the Statute of Limitations by specifying a shorter, *but reasonable*, period within which to commence an action." *Exec. Plaza, LLC v. Peerless Ins. Co.*, 5 N.E.3d 989, 991 (N.Y. 2014) (quoting *John J. Kassner & Co. v. City of New York*, 389 N.E.2d 99, 103 (N.Y. 1979)); *see also* C.P.L.R. § 201 ("An action . . . must be commenced within the time specified in this article unless . . . a shorter time is prescribed by written agreement."). Whether a contractual limitations period is reasonable depends on "whether the plaintiff had a

---

[1] This Opinion applies New York law because the parties do. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law.") (internal quotation marks omitted).

reasonable opportunity to commence its action within the period of limitation." *Exec. Plaza*, 5 N.E.3d at 992 (internal quotation marks and citation omitted). "In making this determination of whether the contractual period of time is reasonable, consideration must be given to all provisions of the contract, the circumstances of its performance, and the relative abilities and bargaining positions of the parties." *USA United Holdings, Inc. v Tse-Peo, Inc.*, 886 N.Y.S.2d 69, at *7 (Sup. Ct. Kings Cty. 2009). New York courts have enforced contractual limitations periods as short as six months but conversely have also found a limitations period of two years to be unreasonable, where a condition precedent to the suit could not be completed within the two-year period. *Exec. Plaza*, 5 N.E.3d at 991–92.

Here, the MWA provides that "no actions, regardless of form, arising out of or in connection with the transactions covered by any Contract Document may be brought by either party more than three (3) years after the cause of action has accrued." The definition of "Contract Document" includes "all Statements of Work issued hereunder." It is undisputed that all of the claims in this action arise out of SOW-P, which is a Statement of Work under the MWA. Contrary to MPI's argument, IBM adequately raised this defense by pleading "the applicable statute of limitations" as its Eleventh Affirmative Defense in its Answer to Third Amended Complaint, the operative complaint. *See Gun Hill Rd. Serv. Station, Inc. v. ExxonMobil Oil Corp.*, No. 08 Civ. 7956, 2013 WL 1804493, at *5 (S.D.N.Y. Apr. 18, 2013) (rejecting identical argument).

The MWA's three-year contractual limitations period is reasonable in the circumstances of this case. Unlike the insurance policy at issue in *Executive Plaza*, which "require[d] a suit within two years from the date of the loss, while imposing a condition precedent to the suit . . . that cannot be met within that two-year period," the MWA does not impose requirements that

would make a timely lawsuit impossible.  5 N.E.3d at 992.  Additionally, the MWA is a

negotiated agreement between sophisticated business entities; it is not a "contract . . . of adhesion

or the product of overreaching."  *Timberline Elec. Supply Corp. v. Ins. Co. of N. Am.*, 421

N.Y.S.2d 987, 988 (4th Dep't 1979) (enforcing one-year contractual limitations period), *aff'd*,

417 N.E.2d 1248 (N.Y. 1980).  Finally, the MWA's limitations period is significantly longer

than many other contractual limitations periods that have been found reasonable.  *See Wechsler*

*v. HSBC Bank USA, N.A.*, --- F. App'x ----, No. 16-1620, 2017 WL 66586, at *1 (2d Cir. Jan. 6,

2017) (summary order) ("In general, New York courts have found one-year limitations clauses to

be reasonable."); *Exec. Plaza*, 5 N.E.3d at 991 ("[W]e have enforced contractual limitations

periods of one year and six months." (citations omitted)).

      To the extent MPI argues that it could not bring some of its claims within the limitations

period because it only later discovered their factual basis, that hardship is not unique to the

MWA's limitations period.  Under New York law, "knowledge of the occurrence of the wrong

on the part of the plaintiff is not necessary to start the Statute of Limitations running in a contract

action."  *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 987 (N.Y. 1993) (internal

quotation marks and citation omitted).  Also, since any limitations period may "sometimes

impose[] hardship on a plaintiff with a meritorious claim," a statute of limitations "cannot be

deemed arbitrary or unreasonable solely on the basis of a harsh effect."  *Zumpano*, 849 N.E.2d at

928–29.

      The three-year limitations period set forth in the MWA is reasonable and enforceable.  To

the extent any of MPI's claims accrued more than three years before MPI commenced this action

on June 23, 2015, that claim is time barred.

### 1.  Breach of Contract – Count I

MPI's breach of contract claim is time barred.  The claim is based on IBM's alleged breach of the "best efforts" clause of Amendment 4, specifically that "IBM failed and refused to make best efforts to establish a new Product under SOW-P."  Amendment 4 is dated June 30, 2010.  Plaintiff seeks "specific performance" in the form of a declaration that IBM's products based on the enhanced MPI transform including jogging constitute a new Product under SOW-P with a GA date of March 2011, so that MPI would be entitled to royalties on that Product until 2021.

A breach of contract claim accrues at the time of the breach.  *Hahn Auto. Warehouse*, 967 N.E.2d at 1190.  If IBM breached the "best efforts" clause -- which terminated by its terms upon IBM's next release of the z/OS operating system -- that breach occurred no later than September 2011, when IBM released the next version of z/OS without a new Product under SOW-P. Because the claim was not filed before September 2014, it is time barred.

MPI is incorrect that its breach of contract claim did not accrue until July 2015 because IBM's failure to make best efforts was an anticipatory breach until then.   An anticipatory breach "occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty."  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (applying New York law).  Here, the time for performance of the best efforts clause could not have been later than the time when IBM released the next version of the z/OS system.  Any anticipatory breach would have occurred earlier, and thus would not delay the accrual of MPI's claim.

MPI is also incorrect that the accrual date or limitations period should be relaxed because "the essence of the breach was concealment of the Crawford facts," namely, that IBM began

discussions with Crawford about supplying transforms technology no later than June 2010.  First, the essence of the claim is that IBM engaged in discussions with Crawford to replace MPI, contrary to IBM's "best efforts" commitment to MPI; that claim does not depend on whether IBM concealed those discussions.  Second, IBM's refusal to use "best efforts" was obvious in December 2010 when IBM gave MPI notice that it would allow SOW-P to expire.  Third, even if MPI were somehow unaware of the claim when it accrued, "New York does not apply the 'discovery' rule to statutes of limitations in contract actions."  *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 36 N.E.3d 623, 628 (N.Y. 2015).  Finally, the allegedly concealed fact -- that IBM was in talks with another transforms vendor during 2010 -- was expressly contemplated in the parties' June 2010 INLA, which allowed the parties "to negotiate or enter into similar relationships with others."  Because the breach of contract claim accrued no later than September 2011 and is subject to the three-year contractual limitations period, the claim is untimely.

## 2.   Declaratory Judgment – Count III

The Complaint seeks a declaration that a new GA date occurred in 2010 or 2011, when IBM made the jogging enhancement available to its customers, triggering a new ten-year royalties period.  This claim is time barred.  "A cause of action for declaratory relief accrues when there is a bona fide, justiciable controversy between the parties. . . . A dispute matures into a justiciable controversy when a plaintiff receives direct, definitive notice that the defendant is repudiating his or her rights."  *Zwarycz v. Marnia Const., Inc.*, 958 N.Y.S.2d 440, 442–43 (2d Dep't 2013).  According to the Complaint, "[a]t all relevant times since 2011, MPI has asserted to IBM that a new GA date occurred in 2011," and "IBM has asserted, to the contrary, that the one and only new GA date . . . that occurred after the initial 2000 GA date was the GA date in June 2005."  Thus, by its own admission, MPI had direct and definitive notice in 2011 that IBM

12

was repudiating MPI's position regarding a new GA date, and a justiciable controversy on that issue has existed since that time.  *See Zwarycz*, 958 N.Y.S.2d at 442–43 (holding that cause of action for declaratory judgment regarding plaintiff's ownership interests in defendant corporations accrued when plaintiff received letter denying him access to the corporations' records); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.").

MPI is incorrect that its declaratory judgment claim did not accrue until July 2015 because IBM's failure to recognize a new GA date was an anticipatory breach until then.  "The primary purpose of declaratory judgments is to adjudicate the parties' rights before a 'wrong' actually occurs in the hope that later litigation will be unnecessary."  *Klostermann v. Cuomo*, 463 N.E.2d 588, 595 (N.Y. 1984).  Thus, a declaratory judgment claim accrues "when a plaintiff receives direct, definitive notice that the defendant is repudiating his or her rights," not when the plaintiff's rights are actually injured.  *See Zwarycz*, 958 N.Y.S.2d at 442–43.

MPI asserts, incorrectly, that the accrual date of this claim should be delayed because MPI was unaware of the three-year contractual limitations period in the contract, which its predecessor i-data negotiated, and because "the breach is derived from unknown facts the non-breaching party had no reason to unearth."  First, MPI admits that it is bound by the contract as i-data's successor in interest.  Second, MPI's assertion that it was unaware of the claim is contradicted by the Complaint as explained above.  Finally, "New York does not apply the 'discovery' rule to statutes of limitations in contract actions."  *ACE Sec. Corp*, 36 N.E.3d at 628. The declaratory judgment claim is therefore untimely.

### 3.   Breach of Covenant of Good Faith – Count IV

The Complaint alleges in Count Four that IBM breached the implied covenant of good faith and fair dealing on May 27, 2010, during a telephone conversation when IBM persuaded MPI to deliver the enhanced transforms product with jogging for Boeing.  The claim is that the breach arose from IBM's failure to disclose in that conversation (1) that IBM had been in discussions with Crawford since February 2010 about Crawford replacing MPI; and (2) the conclusions that IBM had reached in its investigation about the non-migration of Version 1 customers to Version 2.  As noted above, a breach of contract claim accrues at the time of the breach.  *Hahn Auto. Warehouse*, 967 N.E.2d at 1190.  Applying the contractual three-year statute of limitations to the May 27, 2010, accrual date, Count Four is time barred.

### 4.   Breach of Covenant of Good Faith – Count V

Count Five alleges that IBM breached the implied duty of good faith and fair dealing by providing certain features of Version 2 to customers owning Version 1 free of any additional charge, thus depriving MPI of royalties.  The Complaint states that this conduct began in 2005, and IBM admits that it first issued a Version 1 software update containing Version 2 features in January 2007, and last did so no later than 2009.  Plaintiff does not dispute these dates.  Measured from either date, Count Five is time barred.

Plaintiff argues that the breach was continuous at least until July 2015, when MPI was no longer entitled to receive royalties on Version 2, and that MPI is entitled to royalties for at least the three years prior to the filing of the lawsuit in 2015.  This argument is incorrect.  First, it confuses the breach with its damages.  IBM's alleged wrongful acts -- the breach -- occurred no later than 2009 when it provided the transform updates to Version 1 customers without committing them to pay additional royalties.  The consequences of the alleged breach -- the

damages -- occurred over the years the additional royalties would have been payable had they been secured.  Second, even if IBM's non-sharing of hypothetical royalties were to constitute a continuing course of wrongful conduct, Plaintiff has not cited and research has not uncovered any authority indicating that such conduct would toll or extend the statute of limitations under New York law.  *Cf. West Haven v. Commercial Union Ins. Co.,* 894 F.2d 540, 545 (2d Cir.1990) (applying Connecticut law course of conduct doctrine to an insurer's contractual duty to defend, such that the statute of limitations on claim of breach of that duty did not begin to run until the duty had ended); *RIDE, Inc. v. APS Tech., Inc.*, No. 11 Civ. 1721, 2015 WL 9581728, at *9 (D. Conn. Dec. 30, 2015) (observing that under Connecticut law, the "continuing course of conduct doctrine tolls the statute of limitations . . . [but] is unclear about whether the . . . doctrine applies to cases . . . that sound in contract," and concluding that it would not).

   Plaintiff also argues that equitable estoppel saves this claim from being time barred.  The Complaint pleads that Defendant concealed its course of conduct and, therefore, the limitations period was "tolled"[2] until October 2015 when Plaintiff learned about IBM's provision of Version 2 features to Version 1 customers.  This argument fails as a factual matter because MPI admits in the Complaint that "MPI was not in fact deceived by IBM's attempt at deception" and, prior to May 2010, "was able to derive what it regarded as incontrovertible proof that version one customers had been able to upgrade to version two."  *See Bellefonte*, 757 F.2d at 528 ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout

---

[2] New York courts do not use the term "equitable tolling."  Rather, "New York appears to use the label 'equitable estoppel' to cover both the circumstances 'where the defendant conceals from the plaintiff the fact that he has a cause of action'" -- to which the Second Circuit and some state courts apply equitable tolling -- and "where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired."  *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002) (quoting Joseph M. McLaughlin, *Practice Commentaries,* N.Y. C.P.L.R. C201:6, at 63 (McKinney 1990)).

the course of the proceeding.").  The argument also fails as a matter of law because equitable

tolling applies only when a "plaintiff was induced by fraud, misrepresentations or deception to

refrain from filing a timely action."  *Zumpano*, 849 N.E.2d at 929.  That condition is not satisfied

here.  Additionally, "knowledge of the occurrence of the wrong on the part of the plaintiff is not

necessary to start the Statute of Limitations running in a contract action," *Ely-Cruikshank*, 615

N.E.2d at 987 (internal quotation marks and citation omitted).  Because the three-year limitations

period began running no later than 2009, Count Five is time barred.

**B.  The Unjust Enrichment Claim – Count II**

IBM is granted summary judgment on the merits of MPI's unjust enrichment claim.  The

Complaint alleges that IBM was unjustly enriched from collecting royalties from its customers

for the 2010 transform with jogging after July 2015, without sharing that revenue with MPI.

MPI seeks the equitable remedy of, in effect, declaring the enhanced transform a new Product,

and awarding MPI royalties for ten years from the putative GA date of that new Product.  MPI

alleges that IBM's not sharing these royalties was unjust because IBM failed to make good on its

assurance to MPI that MPI's concerns about royalty compensation would be addressed.

"[A] claim alleging unjust enrichment may not be maintained where there is a valid and

express agreement between the parties which explicitly covers the same specific subject matter

for which the implied agreement is sought."  *MT Prop., Inc. v. Ira Weinstein & Larry Weinstein*,

*LLC*, 855 N.Y.S.2d 627, 628 (2d Dep't 2008).  Here, the parties' agreement specifically

prescribes MPI's rights in exchange for providing the jogging feature to IBM.  Amendment 4

provides that the "Cost" for "Support of Jogging in the Transforms" with a due date of May 28,

2010, is "EUR10,000, payable upon successful Customer acceptance."  Amendment 4 also

contains an integration clause stating that "this Amendment and the subject Agreement are the

complete and exclusive statement of the agreement between the parties, superseding all proposals or other prior agreement, oral or written, and all other communications between the parties relating to this subject." The integration clause must be enforced according to its terms and precludes the unjust enrichment claim. *See Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 627 (N.Y. 1997) (an integration clause "require[s] full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing").

### C.      Objection to Order Denying Leave to Amend

MPI seeks to amend the Complaint to add copyright infringement claims. Judge Freeman concluded that "MPI has not shown good cause for its late proposed amendment, as required by Rule 16," and "even if Rule 16 were not to stand as a bar to amendment, the fact that the amendment would cause undue prejudice to IBM and significant delay in the resolution of this action militate against permitting the amendment under Rule 15." MPI argues in its objection that Judge Freeman misapplied the good cause standard under Rule 16 and erred in finding undue delay by MPI and prejudice to IBM under Rule 15. Judge Freeman's Order is not clearly erroneous or contrary to law and is therefore affirmed.

"Where, as here, a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (internal quotation marks and citations omitted). Good cause under Rule 16 depends on the moving party's diligence and exists where the deadline to amend the pleadings could not have been met despite the moving party's efforts. *Parker v. Columbia Pictures Indus.*,

17

204 F.3d 326, 339–40 (2d Cir. 2000).  Even under the more lenient standard of Rule 15, "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *Holmes*, 568 F.3d at 334 (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

MPI has not demonstrated diligence sufficient to warrant leave to file a Fourth Amended Complaint at this late stage in the proceedings.  MPI first discovered the "possible infringement of copyright" in October 2015, when it obtained documents in discovery that turned out to be privileged and inadvertently disclosed by IBM.  MPI received other, non-privileged documents supporting the proposed copyright claims in discovery on February 29, 2016.  MPI argues that had Judge Freeman managed the case differently, MPI could have filed as early as June 2016.  In any event, MPI did not seek leave to amend the Complaint until October 24, 2016, after discovery had ended and after IBM had moved for summary judgment and that motion was fully briefed.

Allowing amendment now, when all of the existing claims are subject to dismissal on summary judgment, would be akin to commencing a new lawsuit, subjecting IBM to another round of discovery and motion practice regarding the proposed copyright claims after the past 18 months of litigation.  *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 126 (2d Cir. 2014) (affirming denial of leave to amend filed after the defendant moved for summary judgment because of the prejudice that would result from the "significant delay and expense associated with further, belated discovery" on the proposed claims).  Judge Freeman's denial of leave to amend was not clearly erroneous or contrary to law and the objection is therefore overruled.[3]

---

[3] To the extent that a de novo standard were held to apply, Judge Freemans's denial of leave to amend is affirmed for the reasons stated in the text above.

**IV.     CONCLUSION**

For the foregoing reasons, IBM's motion for summary judgment is GRANTED, and

MPI's Objection to Judge Freeman's November 14, 2016, Order is OVERRULED.

The Clerk of Court is directed to close the motions at Docket No. 168 and Docket No.

240.

SO ORDERED.

Dated: February 6, 2017
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**