UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MPI TECH A/S,<br><br>                              Plaintiff,<br><br>            -against-<br><br>INTERNATIONAL BUSINESS MACHINES<br>CORPORATION,<br><br>                              Defendant. | 15cv4891 (LGS) (DF)<br><br>**CERTIFICATION OF FACTS<br>AND REPORT AND<br>RECOMMENDATION** |

**TO THE HONORABLE LORNA G. SCHOFIELD, U.S.D.J.:**

Currently before this Court is a motion by defendant International Business

Machines Corporation ("IBM") (Dkt. 249) to hold plaintiff MPI Tech A/S ("MPI") and/or its

counsel, Marc J. Goldstein, Esq.  ("Goldstein") in civil contempt for violating both the Protective

Order that governs the treatment of discovery material produced in this case (*see* Stipulated

Protective Order, dated Oct. 19, 2015 ("Protective Order") (Dkt. 44)) and a subsequent Order by

this Court, construing the terms of that Protective Order (*see* Order, dated Oct. 13, 2016 (the

"10/13/16 Order") (Dkt. 224)).  Specifically, IBM contends that, despite this Court's unequivocal

ruling that MPI could not, consistent with the terms of the Protective Order, use material

produced in discovery in this action as the basis for commencing a new lawsuit, MPI, through

the actions of Goldstein, has proceeded to do exactly that.

For the reasons set forth below, I hereby (1) certify to Judge Schofield certain facts that

would justify a finding that Goldstein and MPI are in contempt, and (2) recommend that, based

on these certified facts, the Court make contempt findings and impose appropriate sanctions.

## BACKGROUND

IBM's contempt motion represents the *fifth* time that this Court has been asked to address, in some fashion, the tenacious effort by Goldstein, on behalf of MPI, to use discovery material subject to the Protective Order as the basis for asserting new claims against IBM and potentially against Ricoh USA, Inc. ("Ricoh") and Crawford Technologies, Inc. ("Crawford"), two entities that are not parties to this action.  This effort first came to light in connection with a privilege dispute between the parties; it was raised for a second time in a motion that MPI attempted to file in this Court pursuant to the All Writs Act to enjoin Ricoh from seeking relief under the Protective Order in its home district of Colorado; it was raised for a third time in an application brought by MPI for "construction and/or modification" of the Protective Order; and it was raised for a fourth time in a motion by MPI to amend its pleadings in this case.  This procedural history is largely set out in two prior Orders of this Court (the 10/13/16 Order, and an Order dated Nov. 14, 2016 (the "11/14/16 Order") (Dkt. 235)), familiarity with which is assumed, but, in relevant part and with certain additions, this history is summarized again below.

### A.      The Protective Order

The Protective Order at issue on IBM's motion was stipulated by the parties and, after being modified by Judge Schofield to incorporate her Individual Rules with respect to the filing of materials under seal or with redactions, it was entered by the Court on October 19, 2015.  (*See* Dkt. 44.)

While, in a "whereas" clause of their stipulation, the parties recited a "desire to enter into an agreement . . . to protect "confidential or sensitive commercial, financial and/or business information" (Protective Order, at 1), the terms of their agreement, as adopted by the Court, included a blanket "use" restriction on "[a]ll Discovery Material produced in the Action."

2

(Protective Order ¶ 2.)[1]  Specifically, the parties agreed that all such material was to be "*used only for the purposes of prosecuting or defending the Action*."  (*Id*. ¶ 2 (emphasis added).))  While the Protective Order noted that, "[i]n particular, Discovery Material may not be used for any commercial or business purpose" (*id*.), the use restriction, as set out above, was plainly drafted to be broader than this.

The Protective Order also permitted any producing party or non-party to designate Discovery Material as "Confidential" or as "Highly Confidential – Attorney's Eyes Only" so as to limit the disclosure of particularly sensitive documents or information.  (*See id*., at §§ B-E.)

### B. The IBM Privilege Dispute

In October, 2015, Goldstein discovered a document in IBM's production that, according to Goldstein, potentially would have supported a claim by MPI, against IBM, for copyright infringement.  (*See* Letter to the Court from Goldstein, dated Oct. 24, 2016 (Dkt. 225), at 2.[2])

---

[1] The parties defined "Discovery Material" broadly, so as to cover:

> any documents as defined by Rule 34(a) of the Federal Rules of Civil Procedure, including but not limited to depositions, deposition exhibits, interrogatory responses, responses to requests for admissions, responses to requests for production of documents, electronically stored information, testimony and any other information produced, given, or exchanged by and among the Parties and any non-parties to the Action, in connection with discovery in the Action, whether produced or supplied pursuant to a formal discovery request or subpoena, a request made at a deposition, or any other formal or informal means.

(*Id*. ¶ 1.)

[2] The version of this October 24, 2016 letter that appears on the public Docket is redacted and does not reveal when Goldstein purportedly first discovered the IBM document that, he contended, would have supported an infringement claim.  Rather, this information is contained in the unredacted version of that letter, which this Court has reviewed *in camera*.  This Court includes the October 2015 date here, as it is not a confidential fact.  (*See also* Order and Opinion, dated Feb. 6, 2017 (Dkt. 263), at 18.)

Goldstein brought this to the Court's attention five months later, in March 2016.  (*See* Letter to the Court from Goldstein, dated Mar. 18, 2016 (Dkt. 119), at 1 (stating that "[t]he content of the [produced] document caused MPI to send IBM on March 1, 2016, a 'Litigation Hold' notice asking IBM to preserve documents concerning a potential claim for copyright infringement while MPI examined further whether to bring such a claim").)  At the same time, Goldstein informed the Court that IBM had taken the position that the document in question was privileged and had been produced inadvertently.  (*See id*.)  Eventually, after considering submissions from both parties on the privilege issue, this Court agreed with IBM that the document and two other documents produced with it were privileged, had been produced inadvertently despite reasonable precautions, and needed to be returned to IBM or destroyed.  (*See* Order dated May 16, 2016 (Dkt. 163 (Text Order)).)

IBM also took the position, however, that, regardless of the privilege, the Protective Order in this case would have prevented MPI from using any of the documents in question as the basis for the assertion of a new claim, as those documents had been produced pursuant to the Protective Order, which, as set out above, restricted their use to the prosecution or defense of this action.  (*See* Defendant IBM's Opposition To Plaintiff's Motion Challenging Defendant's Assertion of Attorney-Client Privilege, dated Apr. 11, 2016 (Dkt. 127), at 11 (quoting Protective Order ¶ 2).)  In this regard, IBM argued that MPI was "absolutely barred, under penalty of contempt sanctions, from using discovery materials such as [those at issue on the privilege motion] to bring a new case."  (*Id*., at 12.)  At the time, given its privilege ruling, this Court did not reach the question of whether MPI would, in fact, be in violation of the Protective Order if it were to use documents produced thereunder as the basis for the assertion of new claims.

### C.      **The Ricoh Dispute**

At the same time as MPI was engaged in its privilege dispute with IBM, MPI was also engaged in a dispute with non-party Ricoh, from which MPI had subpoenaed documents in November 2015, in connection with this case.  (*See* Third Party Ricoh's Motion To Enforce Protective Order and for Sanctions (D. Colo. May 12, 2016) (filed in this case at Dkt. 161-1).) Not only was Ricoh's production automatically covered by the Protective Order,[3] but, in producing its documents, Ricoh had designated material as "Confidential" under the Protective Order, as the terms of that Order permitted it to do.  (*See generally* Dkt. 161-1.)  In fact (like IBM had done with its inadvertently produced privileged documents), Ricoh had designated its documents as "Highly Confidential" under the Protective Order, which meant that the documents had been produced on an attorneys'-eyes-only basis.  (*Id*.; *see also* Protective Order ¶ D(12).) When Goldstein discovered that Ricoh's produced materials included documents that, in his view, would support MPI's potential copyright-infringement claim, Goldstein began speaking with Ricoh's counsel about the possibility that Ricoh would voluntarily "de-designate" particular documents and/or permit Goldstein to share them with certain MPI executives.  (*See* Dkt. 161-1, at 3-4.)

According to Ricoh's counsel, Goldstein admitted in an April 27, 2016 telephone call that the purpose of showing the documents to his client would have been to enable MPI to explore potential new claims against IBM and potentially against Ricoh, as well.  Indeed, on May 4, 2016, Goldstein submitted a letter to this Court, in which he confirmed that Ricoh, as well as Crawford, were "potential co-defendants with IBM on potential new causes of action that could

---

[3] The Protective Order contemplated that documents produced in discovery by non-parties would be covered by its terms.  (*See* Protective Order ¶ 1 (quoted *supra*, at n.1).)

involve claims of copyright infringement and/or misappropriation of trade secrets . . . ."[4]  By that May 4 letter, Goldstein also sought leave to file an application for this Court to "construe and/or modify the Protective Order," so as to provide him and MPI with greater certainty as to what actions were permitted (or were not permitted) under that Order, and so as to afford MPI an opportunity to argue in favor of a change to the Protective Order, should that Order be read by the Court as prohibiting MPI from using the Ricoh documents as the basis for the assertion of new claims.  (*See* Dkt. 153.)  On May 10, 2016, this Court set a briefing schedule for the requested motion.  (Dkt. 159.)

Meanwhile, Ricoh refused to waive its rights under the Protective Order, and, on May 12, 2016, it filed a motion in the federal district court in Colorado, its district of residence, seeking to enforce the Protective Order against MPI.  (Dkt. 161-1.)  Ricoh asked the Colorado district court, *inter alia*, to "[o]rder Mr. Goldstein and MPI to cease and desist from investigating or bringing new causes of action against Ricoh based on information acquired or resulting from Ricoh's third-party production pursuant to the subpoena served on Ricoh in Colorado."  (*Id.*, at 10.)

On May 16, 2016, MPI then attempted to file a motion in this Court under the All Writs Act, 28 U.S.C. § 1651, seeking an injunction "to protect this Court's exclusive jurisdiction to construe the Protective Order" by preventing Ricoh from pursuing its motion in Colorado. (Letter to the Court from Goldstein, dated May 16, 2016 (Dkt. 161).)  According to Goldstein, such a motion was needed to prevent the "risk of inconsistent adjudication."  (*Id.*, at 4.)  As he framed the issue:

---

[4] The copy of this letter filed by MPI (Dkt. 153) was redacted, purportedly to protect confidential information.  The above quotation, which does not itself disclose any factual basis for MPI's potential new claims, is taken from the unredacted copy of the letter that was provided separately to the Court.

> The very reason MPI is submitting the question of the proper
> meaning of Protective Order paragraph two is to obtain a clear
> determination before further litigation steps are taken whether any
> steps by MPI in contemplation of new causes of action based on
> information gleaned from Ricoh-produced documents constitute a
> violation of the Protective Order and a contemptuous course of
> action, as Ricoh and IBM contend.

(*Id.*, at 4-5.)

Goldstein, however, did not properly file MPI's All Writs Act motion (*see* Dkt. 161),

resulting in the motion being terminated administratively on May 20, 2016.  In any event, MPI

withdrew the motion as moot, after the Honorable R. Brooke Jackson, U.S.D.J., of the District of

Colorado, issued this ruling on May 25, 2016, following a hearing:

> The Court's intent is that until the magistrate judge in New York
> rules on MPI's pending motion for interpretation or modification
> of the protective order in that case, MPI may not use the Ricoh
> documents for any purpose other than its prosecution of the claims
> it asserted in that case.  That specifically prohibits any use of the
> Ricoh documents to investigate or prosecute any claim against
> Ricoh.  The Court has not yet determined what further injunctive
> relief it might consider, if any, after the magistrate judge's ruling is
> issued.

(*See* Declaration of Daniel A. Zaheer, Esq., in Support of IBM's Opposition to MPI's

Application, dated June 7, 2016 (Dkt. 182), Ex. H (Dkt. 182-8 (Minute Order (Jackson, J.), dated

May 25, 2016)), at 3-4; *see also* Letter to this Court from Goldstein, dated May 24, 2016

(Dkt. 173) (stating that "[i]t would appear th[at] MPI's application for an All Writs Act

injunction is moot"); Order dated June 1, 2016 (Dkt. 179) (Mem. Endors.) (construing

Goldstein's May 24 letter as a voluntary withdrawal of the All Writs Act motion).)

### D.     MPI's Application for Construction or Modification of the Protective Order

As noted above, Goldstein wrote to this Court on May 4, 2016 – while the privilege issue

involving IBM was *sub judice* before this Court, and while MPI's dispute with Ricoh was

simmering – and squarely placed before the Court the meaning of the Protective Order and the

obligations it imposed regarding the use of material produced thereunder.  In that letter,

Goldstein pointed out that, in connection with the privilege dispute, IBM had taken the position

that MPI would be in contempt, if it were to use Discovery Material produced pursuant to the

Protective Order as the basis for investigating or commencing new claims against IBM.  (*See*

Letter to the Court from Goldstein, dated May 4, 2016 (Dkt. 153) (stating that it was "evident

from [Goldstein's] communications with IBM['s] counsel that they contemplate calling for

imposition of contempt sanctions if MPI takes further steps in contemplation of new causes of

action").)  In light of this, Goldstein wrote:

> MPI wishes to submit an application to construe and/or modify the
> Protective Order, so that it may be relieved of the spectre of an
> application for contempt sanctions, or, if IBM's position is correct,
> so that the Court may instruct MPI to desist from the course of
> conduct that IBM contends is contumacious.

(*Id*., at 1-2.)  This Court permitted MPI to proceed with its application, and the parties then filed

papers directed to the meaning of the terms of the Protective Order.  (Dkts. 171, 181, 198, 199.)

With this Court's permission, Ricoh also submitted a letter to state its position (Dkt. 220), and

MPI responded (Dkt. 221).

On October 13, 2016, this Court resolved MPI's application by issuing an Order finding,

in principal part, that the terms of the Protective Order unambiguously prohibited MPI from

using documents produced thereunder for the purpose of asserting new claims in a separate

lawsuit, and that a modification of this aspect of the Protective Order was not warranted.  (*See*

*generally* 10/13/16 Order.)

MPI did not seek reconsideration of this Court's October 13 Order.  Further, although

MPI appealed from the Order to Judge Schofield (Dkts. 232, 233), MPI objected, in that appeal,

only to a single footnote in this Court's Order, in which this Court had indicated that it had not

reached the question of whether the Protective Order would have prohibited MPI from amending

its pleading in this case to add new claims based on the produced documents, as MPI had

"appear[ed] to concede that it [was] too late to move to amend in this case to add copyright

claims" (*see id.*; *see also* 10/13/16 Order, at § I(C), n.6).  In other words, MPI did not challenge

any aspect of this Court's Order that constituted or underlay this Court's finding that the

Protective Order would prohibit MPI from asserting, in a separate action, claims based on

documents produced under the Protective Order.

### E.     **MPI's Motion To Amend**

Against this backdrop, and while MPI's limited appeal to Judge Schofield was pending,

MPI moved, on October 24, 2016, for leave to amend the Third Amended Complaint to assert its

new copyright-infringement claims in this action, instead of in a new lawsuit.  (*See* Letter to the

Court from Goldstein, dated Oct. 24, 2016 (Dkt. 225).)  IBM opposed the motion to amend

(Dkt. 226), and MPI submitted a reply (Dkt. 228).

On November 14, 2016, this Court denied the motion to amend, finding that MPI had not

satisfied the standards it needed to meet under both Rule 15 and Rule 16 of the Federal Rules of

Civil Procedure.  (11/14/16 Order.)  Looking first to Rule 16, this Court found that MPI had not

demonstrated "good cause" for failing to meet a deadline set by the Court for motions for

amendment or joinder, as required by Rule 16(b).  This Court reasoned that MPI had missed that

deadline by more than a year, and that, even if MPI did not learn of its potential new claims until

after that deadline had passed, it failed to act with reasonable diligence in seeking the

amendment.  (*Id.*, at 6-10.)  This Court also found that, in any event, factors of undue delay and

prejudice counseled against permitting the proposed amendment under Rule 15.  (*Id.*, at 10-13.)

In this regard, this Court noted that MPI had delayed in seeking amendment until after discovery in this case was closed and IBM's motion for summary judgment was fully submitted.  (*Id.*, at 12.)  This Court also noted that MPI had itself conceded that the Court would need to reopen discovery if MPI were permitted to amend its pleading so as to assert its new copyright claims, and found that this – together with MPI's apparent desire to join Ricoh and/or Crawford as additional defendants – would not only cause undue prejudice to IBM, but would significantly delay resolution of the action.  (*Id.*, at 12-13.)

MPI appealed to Judge Schofield from this Court's November 14 Order denying leave to amend (*see* Dkts. 237, 238; *see also* Dkt. 243), and also informed Judge Schofield that, in light of that Order, it considered its limited objection to this Court's October 13 Order to be duplicative and thus moot (*see* Letter to the Court from Goldstein, dated Nov. 28, 2016 (Dkt. 239)).

By Order and Opinion dated February 6, 2017 (Dkt. 263), Judge Schofield granted summary judgment in IBM's favor, thereby dismissing all of MPI's existing claims.  At the same time, Judge Schofield overruled MPI's objection to this Court's November 14 Order denying leave to amend.  (*See id.*, at 17-18.)

**F.    MPI's Filing of a New Action and
IBM's Motion for Contempt Sanctions**

On November 25, 2016, less than two weeks after this Court issued its November 14, 2016 Order, MPI proceeded to commence a new action in this Court, asserting copyright infringement and related claims against IBM and Crawford.  *See MPI v. IBM, et al.*, No. 16cv9161 (KBF) (S.D.N.Y.) (herein, the "New Action").  According to MPI, it believed the commencement of the New Action was "consistent" with this Court's October 13, 2016 Order and with the Protective Order because, in its view, "no use of Discovery Material, within the

meaning of the Protective Order, was made in the Complaint . . . and the October [13] Order expressly stated that a Complaint that did not make such use could be filed without offending the Protective Order."  (Dkt. 239.)

On January 9, 2017, however, IBM moved for sanctions.  (Dkt. 257 (Notice of Motion) (originally filed at Dkt. 249); *see also* Defendant [IBM's] Memorandum of Law in Support of Its Motion To Hold Plaintiff [MPI] and/or Its Counsel in Civil Contempt, and for Sanctions, dated Jan. 9, 2017 ("IBM Mem.") (Dkt. 258 (originally filed at Dkt. 250)); Affidavit of Daniel A. Zaheer in Support of Motion To Hold Plaintiff [MPI] and/or Its Counsel in Civil Contempt, and for Sanctions, sworn to Jan. 9, 2017 ("Zaheer Aff.") (Dkt. 259 (originally filed at Dkt. 251)), and exhibits thereto.)  Representing to the Court that MPI had admitted that the New Action was "premised on documents produced pursuant to the Protective Order," IBM moved to have MPI and/or Goldstein held in civil contempt, for what IBM characterized as a "blatant violation" of both the Protective Order and this Court's Order of October 13, 2016.  (IBM Mem., at 1; *see also id.*, at 4 (noting that, in a letter to the Honorable Katherine B. Forrest, U.S.D.J., in connection with the New Action, MPI "admitted that the Complaint [in that case] [was] 'informed by' the discovery in this case").)  IBM also requested that the Court order MPI and/or its counsel to comply fully with the Protective Order; to withdraw the New Action; and to pay IBM's attorneys' fees associated with (a) bringing the sanctions motion, (b) opposing MPI's earlier motion to construe or modify the Protective Order, and (c) defending against the New Action.  (*Id.*, at 15.)

On January 12, 2017, this Court issued an Order that, *inter alia*, directed Goldstein to submit, with MPI's opposition to IBM's sanctions motion, "a sworn affidavit or declaration under penalty of perjury . . ., stating whether any documents designated as 'Confidential' or

'Highly Confidential' under the Protective Order in this case, and produced in discovery in this case by either IBM or any non-party pursuant to that Protective Order, were used, in any way, in connection with MPI's commencement of [the New Action]."  (Dkt. 256 ¶ 2.)  "Specifically," this Court directed Goldstein to "address in his affidavit or declaration whether any claims asserted in the [N]ew [A]ction [were] based, in whole or in part, on information learned by MPI and/or by counsel from such documents."  (*Id.*)

MPI opposed IBM's sanctions motion by filing a Declaration by Goldstein, as well as a memorandum of law.  (Declaration of Marc J. Goldstein in Opposition to IBM's Motion for Contempt Penalties and Sanctions, dated Jan. 25, 2017 ("Goldstein Decl.") (Dkt. 260); Memorandum on Behalf of [MPI] and Marc J. Goldstein, Esq. in Opposition to IBM's Motion for Contempt Penalties and Sanctions, dated Jan. 26, 2017 ("MPI Opp. Mem.") (Dkt. 261).)  In its opposition memorandum, MPI conceded that its *only* source of information for the Complaint in the New Action was the confidential Ricoh documents.  (*See* MPI Opp. Mem., at 7 ("IBM's assumption [was] correct that [Goldstein], in drafting the Complaint [in the New Action] – in regard to the material allegations of conduct by the Defendants alleged to constitute copyright infringement and trade secrets misappropriation – did *not* rely on information sources *other than* the Ricoh documents . . . ." (emphasis added)).)  In fact, Goldstein attached confidential Ricoh documents to his Declaration as a sealed exhibit, ostensibly to demonstrate that, contrary to IBM's suggestion, MPI had "a factual basis" for its claims in the New Action.  (*See* Goldstein Decl. ¶ 6 (asserting that providing these documents as a sealed exhibit was "a use in this Action that entail[ed] no Protective Order violation).)

Yet, despite admitting that the New Action was commenced with *no* factual foundation apart from the contents of confidential documents produced by Ricoh pursuant to the Protective

Order, Goldstein argued that he did not "use" those documents for a prohibited purpose.  Rather,

he explained that, when drafting that Complaint, he did not simultaneously review the Ricoh

documents.  (Goldstein Decl. ¶¶ 9-11.)  He stated that, to the contrary, he had not reviewed those

documents for a number of months, and that, in preparing the Complaint, he applied only his

"retained . . . residual knowledge" and "general recollection" of what he had seen in some of the

documents.  (*Id.*)  He also stated that, as MPI's new claims did not require pleading "with

particularity," he "made no effort to refresh [his] recollection" regarding the specific contents of

the documents.  (*Id.* ¶ 11.)[5]

Goldstein further stated in his Declaration that he had "rejected IBM's requests for a

telephone discussion of the factual basis for allegations in the new Complaint, . . . because to use

Discovery Material from this case to dissuade IBM from making . . . a motion [to dismiss or to

strike that Complaint] would have been, in [his] judgment, a use of Discovery Material

prohibited by the Protective Order."  (*Id.* ¶ 12.)  He also explained that his intent had been to

commence the New Action without having "used" the documents produced by Ricoh pursuant to

the subpoena issued in this action, but that, once the New Action proceeded to a discovery phase,

he planned to use his "knowledge" of those documents to frame a new subpoena to Ricoh, which

could be expected to result in a new production of documents that could then be used to support

the pleaded allegations.  (*See id.* ¶ 13.)

IBM filed a reply on February 2, 2017, arguing that MPI's position – that it did not

violate the Protective Order because, instead of using the confidential documents as the basis for

---

[5] Goldstein also stated that, as "[a]ll or nearly all of the documents [produced by Ricoh] were designated 'Highly Confidential – Attorneys Eyes Only' under the Protective Order in this case," he "did not share any of the document or summarize their contents in writing or orally to MPI . . . ."  (*Id.* ¶ 3.)

the New Action, it only used Goldstein's "knowledge" of those documents – "defie[d] both common sense and the unequivocal terms of this Court's October 13 Order."  (Defendant [IBM's] Reply Brief in Support of Its Motion To Hold Plaintiff [MPI] and/or Its Counsel in Contempt, and for Sanctions, dated Feb. 2, 2017 ("IBM Reply Mem.") (Dkt. 262), at 1.)

## DISCUSSION

## I. APPLICABLE LEGAL STANDARDS

### A. Continuing Jurisdiction To Enforce the Protective Order

In this case, IBM has accused MPI and/or Goldstein of acting in contempt of both an Order issued by Judge Schofield (*i.e.*, the Protective Order itself), and an Order issued by this Court (*i.e.*, the 10/13/16 Order, construing the Protective Order).  Technically, though, it is only the Protective Order that MPI and/or Goldstein has potentially violated, as the October 13 Order merely construed the Protective Order and declined to modify it.

At the time IBM brought its contempt motion, the Court had not yet granted summary judgment to IBM on MPI's claims.  Although MPI's claims have now been dismissed, "[i]t is black letter law that the Court has jurisdiction over [a] [p]rotective [o]rder even after the case has been dismissed."  *Rio Tinto PLC v. Vale S.A.*, No. 14cv3042 (RMB) (AJP), 2016 WL 900652, at *1 (S.D.N.Y. Mar. 9, 2016), *aff'd*, 2016 WL 2605754 (Mar. 25, 2016).  Further, the Protective Order in this case expressly states:

> After the conclusion of this litigation, the provisions of this Protective Order shall continue to be binding and this Court shall retain jurisdiction over all persons who have access to Confidential or Highly Confidential Discovery Material produced pursuant to this Protective Order for the purpose of enforcement of this Protective Order, including any appropriate sanctions for violations.

(Protective Order ¶ 26.)  Thus, IBM's motion for contempt and related sanctions for MPI's alleged violation of the Protective Order survives the dismissal of MPI's claims, and the Court retains jurisdiction to enforce the terms of that Order.

### B.   Contempt Standards

Before a party may be held in civil contempt, due process requires that it be given notice that it is a defendant in a contempt proceeding.  *See Leadsinger, Inc. v. Cole*, No. 05cv5606 (HBP), 2006 WL 2266312, at *7 (S.D.N.Y. Aug. 4, 2006) (citing *Drywall Tapers & Pointers of New York v. Local 530*, 889 F.2d 389, 394 (2d Cir. 1989)).  Once the party has received such notice, it "may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'"  *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)); *accord S.E.C. v. Durante*, 641 Fed. Appx. 73, 76 (2d Cir. 2016) (Summary Order).

The party seeking contempt sanctions bears the burden of establishing these three elements, by clear and convincing evidence.  *Latino Officers Ass'n City of N.Y., Inc. v. City of N.Y.,* 558 F.3d 159, 164 (2d Cir. 2009).  Given this allocation of the burden, the "relevant inquiry" for the court is "not whether [the alleged contemnor has] adequately rebutted [the moving party's] evidence," but rather whether the moving party's evidence "alone [is] adequate to establish" the satisfaction of the necessary elements of contempt.  *Id*. (citation omitted).  In defense to an allegation of civil contempt, the alleged contemnor may endeavor to show that the moving party has not met its burden because "the order claimed to be violated is vague and

indefinite" or because the "proof of the party's noncompliance is not clear and convincing." *Sacco v. Burke*, 764 F. Supp. 918, 921 (S.D.N.Y. 1991).  It is also a defense to contempt that "the disobedient party lacked actual knowledge of the terms of the order."  *Id.*; *see also Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002).

"Civil contempt sanctions may serve dual purposes, namely 'to secure future compliance with court orders and to compensate the party that has been wronged.'"  *Cordius Trust v. Kummerfeld*, No. 99cv3200 (DLC), 2009 WL 3416235, at *6 (S.D.N.Y. Oct. 23, 2009) (quoting *Paramedics*, 369 F.3d at 657).  Although federal courts have "broad discretion" to determine an appropriate contempt sanction, "'a court is obliged to use the least possible power adequate'" to bring about compliance.  *Id.* (quoting *Spallone v. United States*, 493 U.S. 265, 276 (1990)).

Pursuant to the Federal Magistrates Act, 28 U.S.C. § 636(e), however, federal magistrate judges have limited civil contempt authority.  *See Servaas Inc. v. Republic of Iraq*, No. 09cv1862 (RMB), 2013 WL 5913363, at *2 (S.D.N.Y. Nov. 4, 2013).  Accordingly, unless the case is one in which the magistrate judge presides with consent of the parties, "a federal magistrate judge's role with respect to [a motion for contempt] is limited . . . to certifying or declining to certify the facts constituting contempt."  *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11cv1590 (LTS) (HBP), 2013 WL 3487350, at *1 (S.D.N.Y. July 12, 2013), *vacated on other grounds*, 784 F.3d 99 (2d Cir. 2015).  A magistrate judge may also recommend that certain contempt sanctions be imposed, where warranted by the record.  *See Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999).

Under the certification process, a magistrate judge may conduct a hearing, if necessary to determine the relevant facts.  *See, e.g.*, *British Int'l Ins. Co. v. Seguros La Republica, S.A.,* No. 90cv2370, 2001 WL 958975, at *7 (S.D.N.Y. Aug. 2, 2001).  In addition, where a magistrate

judge certifies facts that constitute contempt, the magistrate judge may require the "person whose behavior is brought into question . . . to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." 28 U.S.C. § 636(e)(6).  In that event, or if the district judge separately schedules a hearing, "[t]he district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person." *Id*.  If the order violated by the contemnor was issued by the magistrate judge in the first instance, then the district judge shall "punish such person in the same manner and to the same extent as for a contempt committed before a district judge." *Id*.  Where, though, hearing testimony would merely be duplicative to evidence submitted in affidavit or documentary form, due process does not require that any contempt hearing be held, including by the district judge.  *S.E.C. v. Credit Bancoprt. Ltd*., No. 99cv11395 (RWS), 2000 WL 968010, at *8 (S.D.N.Y. July 12, 2000) (noting that an alleged contemnor has no absolute right to a hearing).

## II.   CONDUCT WARRANTING CONTEMPT FINDINGS AGAINST MPI AND GOLDSTEIN

### A.   Clarity of the Protective Order's Terms

In determining whether the record here would support a contempt finding, this Court first looks to the question of whether the Protective Order "clearly" and "unambiguously" prohibited Goldstein and/or MPI from using the information contained in the Ricoh documents for the purpose of commencing a new suit.  *See, e.g*., *Paramedics Electromedicina Comercial,* 369 F.3d at 655.  This Court finds that this "use" was, in fact, prohibited, and that the Protective Order was clear and unambiguous in this regard.

As a starting point, this Court notes that it previously held, in its October 13, 2016 Order, that the plain language of the Protective Order's use restriction was "unambiguous" and

expressly determined that, based on that language, MPI could not use the Ricoh documents to support the assertion of copyright infringement and potentially other claims against IBM or others in a new lawsuit, without violating the Protective Order.  (10/13/16 Order, at § I(A).)  In its October 13 Order, this Court examined – and rejected – every argument raised by Goldstein as to why this was not what the Protective Order said or how it should be construed.[6]  This Court also rejected Goldstein's arguments that the restriction against using the documents to support a new lawsuit should not apply if the new action were designated as "related" to this one, or if a similar protective order were issued in the new action.  (*See id.*, at §§ I(A), (B).)  This Court also found that, given that extensive document production had already been made in reliance on the Protective Order, it would be "presumptively unfair" for the Court to modify the Protective Order so as to allow Discovery Material to be used in the manner sought by Goldstein, and that MPI had "failed to demonstrate any improvidence in the grant of the Protective Order or any extraordinary circumstances or compelling need justifying [such] . . . modification."  (*Id.*, at § II.)

---

[6] One of the principal arguments raised by Goldstein at that time was that the use restriction contained in the Protective Order should be construed in view of what MPI described as the Protective Order's "primary purpose," i.*e.*, "to prevent public disclosure or commercial misuse of sensitive information."  (Dkt. 171, at 10.)  This Court specifically addressed that argument and rejected it.  (*See* 10/13/16 Order, at § I(A) (acknowledging this purpose, but also finding that the Protective Order served other purposes and policy goals as well, and concluding that, "[i]n any event, regardless of whether the 'primary' purpose of the Protective Order was to protect sensitive business information, MPI has set forth no compelling reason why this Court should read the broad 'use' restriction contained in the Protective Order as referring only to the public disclosure or commercial use of such information, when precedent regarding the meaning of the type of language employed here is clearly to the contrary").)  This Court notes that, two months after this Court issued that decision, MPI wrote to Judge Forrest, in the New Action, and restated the *same* position that this Court had rejected – that the Protective Order "is to be construed (as to what is a prohibited 'use') based on the Protective Order's stated purpose to preserve the confidentiality of business secrets and proprietary information . . . ."  (Dkt. 15, at 2, in 16cv9161.)

Now, having been accused of contempt, Goldstein – on his own behalf and on behalf of MPI – points to certain cases cited by this Court in its October 13 Order to argue that, consistent with that Order, the Protective Order cannot be said to have unambiguously prohibited him from using only his personal recollection of the Ricoh documents' contents as the basis for commencing a new action.  In fact, Goldstein has gone so far as to argue that this Court *itself* essentially suggested, in its October 13 Order, that, as long as MPI were to file a new Complaint that neither attached the Ricoh documents, nor quoted them, nor detailed their contents, the Protective Order would not be violated – even if, in drafting that Complaint, Goldstein had *no* factual basis for asserting the pleaded claims, apart from his "residual knowledge" of what he had read in the Ricoh documents.  These arguments are unpersuasive and disingenuous.

Goldstein essentially employs the following logic.  First, he notes that this Court did not, in its October 13 Order, "exhaustively" list the types of conduct that would constitute prohibited "use" of the Ricoh documents.  (MPI Opp. Mem., at 13.)  Second, he states that, for guidance as to this Court's intent on this point, one should therefore look to the underlying facts of the cases on which this Court relied; according to Goldstein, the types of "uses" of protected documents that were found impermissible in those cases all involved some sort of "re-publication" of the documents.  (*Id.*, at 13-16.)  Third, Goldstein states that, in contrast, the cases highlighted by this Court for examples of permissible conduct involved the use of "*knowledge* derived from permitted review" of produced documents.  (*Id.*, at 17 (emphasis in original).)  From this, Goldstein argues that it was reasonable for him to have understood this Court to have drawn a distinction between the impermissible filing of a new complaint that – either by attaching, quoting, or specifically referencing the Ricoh documents – "re-published" the information contained in those documents (conduct in which, he claims, he did not engage), and the

permissible "'use' of [his] *knowledge* of such documents" to make the "strategic decision" to commence a new lawsuit (which, he claims, is all that he did).  (*Id*., at 18 (emphasis in original).) Finally, while acknowledging that this Court previously held that the Protective Order prohibited MPI from bringing new claims "based upon" information produced in discovery in this action (10/13/16 Order, at § I(B) (adopting language from an IBM brief)), Goldstein argues that this Court never "elaborated" on the meaning of "based upon," and that this phrase, too, could be reasonably understood to incorporate the same distinction between "re-publication" of documents and the use of counsel's "knowledge" of those documents' contents.  (MPI Opp. Mem., at 18.)[7]

Taking this logic a step at a time, this Court first notes that Goldstein has mischaracterized the cases relied upon by this Court in supporting its construction of the Protective Order's "use" restriction.  In *In re Biovail Corp. Sec. Litig*., 247 F.R.D. 69 (S.D.N.Y. 2007), for example, the first analogous precedent cited by this Court (*see* 10/13/16 Order, at § I(A)), Biovail was found to have violated a similar restriction not only by putting "some of the [protected] documents" into the allegations that it pleaded in a new action, but also by putting

---

[7] Goldstein makes one further argument which this Court has little need to address.  He suggests that the fact that Judge Schofield declined to accept MPI's new copyright case as "related" to this case "implies" that the Court did not consider MPI's filing of the new case to have violated the Protective Order.  (*Id*., at 21.)  He deduces this from the fact that, under the rules governing the division of business in the Court, the interest of "efficiency" is a factor considered by the Court in determining whether cases should be treated as related, and, here, had Judge Schofield believed that the new case was filed in contempt of her Order, it would have been most efficient for her to have accepted the case as related and then immediately dismissed it.  (*See id*., at 21-22.)  In making this argument, Goldstein made no mention of other facts that, of course, are relevant:  that the new case rested on entirely different legal and factual grounds than this one, that it included another party, that discovery in this case was already complete and summary judgment briefing fully submitted, and that, in any event, Judge Schofield would have had no way of knowing, when the second action was filed, that MPI lacked any basis for its asserted allegations, apart from the Ricoh documents.

into its new allegations "information flowing [from]" those documents, *id.*, at 70; *see also* 10/13/16 Order, at § I(A) (quoting this language).  In fact, as a result of the violations, the court ordered, in part, that any "factual assertion based solely on any information that is solely supported by any such document(s)" be redacted from the new pleading.  *Id.*  Thus, Goldstein is incorrect that the cases cited by this Court as illustrative of prohibited conduct all turned entirely on the direct copying, quoting, attaching, or otherwise "re-publishing" of documents subject to a use restriction.

Second, Goldstein has equally mischaracterized the cases referenced by this Court as illustrating permissible conduct.  This Court briefly referenced two such cases, *E.E.O.C. v. Morgan Stanley & Co.*, 132 F. Supp. 2d 146, 158 (S.D.N.Y. 2000), and *Royal Park Investments SA/NV v. Deutsche Bank National Trust Company*, 192 F. Supp. 3d 400 (S.D.N.Y. 2016).  (*See* 10/13/16 Order, at § I(C).)  Of those, the *Royal Park* decision is more directly relevant, as it specifically related to a use restriction in a protective order.  In that case, the plaintiff applied to the court for relief from the defendant's alleged violation of such a restriction.  The court framed the question underlying the plaintiff's application as:

> whether a stipulated court order barring the 'use' of discovery
> documents in other cases prohibits counsel *not only from* making
> any substantive use of such documents, or the information they
> contain, *but also from* using the knowledge that the documents
> exist, even for the limited purpose of obtaining the same or similar
> documents in another case in which they are arguably discoverable
> but had not yet been produced.

*Id.*, at 402-03 (emphases added).  The court found that the latter use was not prohibited by the protective order in the case, and it was this proposition that this Court referenced in its Order.  (*See* 10/13/16 Order, at § I(C) (citing *Royal Park* for the proposition that "without violating a similarly worded protective order, counsel could 'use' its 'knowledge' of what was produced in

one case to advocate for the production of the same documents, if otherwise discoverable, in another case").)  In directing the parties to propose modifications to the protective order at issue, the *Royal Park* court's objective was to prevent unfair discovery practices; plaintiff could not "withhold relevant and discoverable documents in one action with impunity, even after producing them in a similar case."  *Royal Park*, 192 F. Supp. 3d at at 407.  Nothing in *Royal Park*, or in this Court's citation to it, could have reasonably suggested to Goldstein that the Protective Order in this case permitted him to make "substantive use" of the Ricoh documents "or the information they contain," *id.* at 403, in preparing the Complaint in the New Action.[8] Here, as noted above, Goldstein has conceded that the substantive basis for the copyright-infringement and other claims asserted in the New Action derived entirely from information contained in the Ricoh documents, and from no other source.  (*See* MPI Opp. Mem., at 7 (stating that "MPI Counsel, in drafting the Complaint – in regard to the material allegations of conduct by the Defendants alleged to constitute copyright infringement and trade secrets misappropriation – did not rely on information sources other than the Ricoh documents").)  Essentially, Goldstein used his recollection of the contents of the documents to draft the new pleading, and has freely admitted that the pleading had no other basis.  This is not analogous to the conduct found permissible in *Royal Park*.

Nor has Goldstein made a colorable argument that this Court's citation to *Morgan Stanley*, or anything in that decision, renders the Protective Order ambiguous.  In *Morgan*

---

[8] Indeed, the court in *Royal Park* had no occasion to reach the issue presented here.  *See id.*, at 405 ("I need not decide, however, whether the Protective Order before me prohibits Deutsche Bank from filing a new lawsuit based on information learned through discovery in this one.  I need only decide whether it prohibits Deutsche Bank's lawyers from using their knowledge of what has been produced here to advocate for the production of the same documents, if otherwise discoverable, in a parallel case against a different defendant.").

*Stanley*, there was no judicial analysis of the meaning of any terms of a protective order; instead, although Morgan Stanley had requested the entry of a protective order, the court declined to enter one.  The underlying facts of the case related to subpoenas served by the Equal Employment Opportunity Commission ("E.E.O.C.") on Morgan Stanley in connection with the E.E.O.C.'s investigation of an employee's charges of discrimination, and Morgan Stanley's desire to prevent the E.E.O.C. from sharing produced documents with the charging party or its counsel.  *See Morgan Stanley*, 132 F. Supp. 2d at 154-60.  The court found that, in light of Supreme Court law interpreting the relevant anti-discrimination statute, the E.E.O.C.'s disclosure of the documents to a charging party "should be the norm," and that orders limiting such disclosure would only be appropriate "in unusual circumstances," not present in the case before the court.  *Id*. at 156-58.  As to Morgan Stanley's concerns that, absent a protective order, the charging party or its counsel might use the produced documents for improper or abusive purposes, the court noted, as an aside, that, "if a lawyer, educated about Morgan Stanley's employment practices by reviewing documents in one case, 'uses' the knowledge thus obtained to make better discovery demands in another case, or otherwise to improve his or her strategic decisions in such other matter, that is a normal consequence of the discovery process."  *Id.* at 158.  Now contending that he merely used his "knowledge" of the Ricoh documents to make the "strategic decision" to commence a new action, Goldstein strains to contort his conduct into behavior that, he suggests, was of the "normal" variety described by *Morgan Stanley*, and that therefore could reasonably be viewed as permissible under the Protective Order, regardless of its plain language to the contrary.  This Court, however, is not buying what Goldstein is selling. Nothing in *Morgan Stanley* – which did not even involve a use restriction – suggests that, in the face of a court order making clear that discovery material covered by a protective order could not

be used to support the assertion of new claims in a new litigation, it would nonetheless be permissible for counsel to use his knowledge of such discovery material for that very purpose.[9]

At bottom, this Court does not accept that the cases cited in its October 13 Order introduced any element of ambiguity into the Protective Order.  As previously held, the Protective Order unambiguously prohibited MPI – or Goldstein, on MPI's behalf – from using the information contained in the Ricoh documents for the purpose of supporting new claims asserted against IBM or any third party in a new action.

### B.     Non-Compliance With the Protective Order

In light of the plain language of the Protective Order's use restriction and Goldstein's own admissions regarding his conduct, this Court finds no factual dispute as to whether Goldstein failed to comply with the Protective Order.  Goldstein has conceded that he prepared a new Complaint containing substantive claims against IBM and Crawford, based on nothing other than the contents of the Ricoh documents, as he recalled those contents from his earlier review of them.  He has further conceded that he proceeded to file the New Action, without having any basis for the asserted claims, other than the use-restricted documents.  These concessions themselves show – clearly and convincingly – that Goldstein violated the Protective Order's prohibition against using produced Discovery Material for purposes other than "prosecuting or defending [this] Action."  (Protective Order ¶ 2.)

The question of whether IBM has satisfied its burden of demonstrating that MPI, itself, failed to comply with the Protective Order is a closer question.  "'The rule that the sins of the

---

[9] It is ironic that, in its opposition papers, MPI criticizes IBM for "[q]uoting convenient snippets of text," which MPI describes as "a shopworn trick to distort and avoid the context." (MPI Opp. Mem., at 9.)  This is precisely what Goldstein has done, by attempting to align his conduct with a limited phrase from *Morgan Stanley*, divorced from its context.

lawyer are visited on the client does not apply in the context of sanctions,' and we therefore must 'specify conduct of the client [itself] that is bad enough to subject [it] to sanctions.'" *Ransmeier v. Mariani*, 718 F.3d 64, 71 (2d Cir. 2013) (quoting *Gallop v. Cheney*, 660 F.3d 580, 584 (2d Cir. 2011)).  Here, Goldstein has represented, under penalty of perjury, that he never shared the "attorneys' eyes only" Ricoh documents with MPI.  (*See* Goldstein Decl. ¶ 3 ("I did not share any of the documents or summarize their contents in writing or orally to MPI").) Further, Goldstein has informed the Court that *he* is the one who drafted the Complaint in the New Action.  (*See id.* ¶ 9 ("I drafted the Complaint"); *id.* ¶ 10 (same).)

Nonetheless, the record here points to the conclusion that MPI was aware of both the Protective Order and this Court's October 13 Order; that MPI was put on fair notice from the Court's Orders that information contained in the Ricoh documents could not be used as the basis for asserting new claims; that, even if MPI had not viewed the documents itself, it knew that Goldstein was basing the allegations in the Complaint in the New Action on information derived from the Ricoh documents; that MPI had absolutely no other basis for asserting the new allegations; and that, despite this, MPI authorized Goldstein to file the new Complaint on its behalf.

Certainly, MPI has raised no defense to IBM's contempt motion based on any lack of knowledge of the Protective Order or its terms.  *See Sacco*, 764 F. Supp. at 921 (holding that lack of knowledge of an order may be a defense to contempt).  Nor has MPI suggested that it was unaware of the fact that, in its October 13 Order, this Court rejected all of Goldstein's asserted reasons as to why, under the Protective Order, MPI should have been permitted to use the information contained in the Ricoh documents as the basis for commencing a new action. Indeed, MPI was required to monitor this litigation, and to inform itself of the contents of the

Court's orders. *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 646 F.2d 800, 808 (2d Cir. 1981) ("[A] party to an action is not permitted to maintain a studied ignorance of the terms of a decree in order to . . . preclude a finding of contempt. The party *and* his counsel have a duty to monitor the progress of the litigation and to ascertain the terms of any order entered against the party" (emphasis added).).

As to MPI's knowledge that its Complaint in the New Action was based on the contents of the Ricoh documents, this Court notes that the new Complaint, itself, asserts:

> MPI first had reason to know of the existence of, and the resulting injury from the acts of copyright infringement and common law misappropriation on or about March 15, 2016. This state of constructive knowledge of MPI arose when its agent, the undersigned counsel [*i.e.*, Goldstein], first became aware of certain information.

(Dkt. 4 ¶ 8, in 16cv9161.) The referenced date in March 2016 apparently coincides with Goldstein's review of the Ricoh documents. (*See* Goldstein Decl. ¶ 3 (stating that he reviewed the Ricoh documents "beginning in early March 2016").) Moreover, before the New Action was commenced, Goldstein made numerous submissions to the Court on MPI's behalf, referring (in unredacted part, and thus presumably shared by Goldstein with MPI) to MPI's desire to consider the assertion of new claims against IBM and potentially others, based on the Ricoh documents. (*See, e.g.*, Dkt. 129-1, at 3 (joint letter from the parties, noting that "[n]ew causes of action that may be asserted by MPI are implicated . . . by the Ricoh documents"); Dkt. 153, at 2 (MPI describing how Goldstein had sought leave from Ricoh to show Ricoh-produced documents to MPI, "where one of MPI's purposes [was] to discuss with its counsel whether the documents support new causes of action"); Dkt. 161, at 5 (MPI seeking determination from Court "whether any steps by MPI in contemplation of new causes of action based on information gleaned from Ricoh-produced documents [would] constitute a violation of the Protective Order"); Dkt. 171,

at 12 (MPI referring to "documents produced by Ricoh and relied on by MPI as the factual basis

for potential new causes of action"); *id.*, at 14 (MPI arguing against any position that might be

advanced by Ricoh that would "construe[] the Protective Order to prohibit MPI from adding

Ricoh as a defendant on new causes of action derived from information in the documents Ricoh

produced"); *id.*, at 19 (MPI arguing that there should be no immunity from suit "on new causes

of action arising from information disclosed in discovery pursuant to document requests in the

Ricoh subpoena . . ."); Dkt. 221, at 3-4 (Goldstein stating that, upon his review of the Ricoh

documents, he "could not help but observe that some of them implicated potential additional

causes of action").  Against this backdrop, this Court concludes that MPI not only had

"constructive knowledge" that the substantive, factual allegations of its Complaint in the New

Action were based on information learned by Goldstein from his review of the Ricoh

documents,[10] but *actual* knowledge that the Ricoh documents were the source of the newly

pleaded allegations.  In any event, MPI has not contended that it had any other basis for asserting

its new claims, and Goldstein's Declaration confirms that there was none.

It is, of course, possible that MPI authorized the filing of the New Action in good-faith

reliance on Goldstein's legal advice, but reliance on the advice of counsel, while it may be

considered in mitigation of punishment, is not a defense to contempt.  *See S.E.C. v. Musella*,

818 F. Supp. 600, 606-07 (S.D.N.Y. 1993) (citing cases).  The core question here is not whether

MPI was ill-advised by counsel that the commencement of the New Action was permitted by the

Protective Order, but simply whether IBM has shown, by clear and convincing evidence, that

---

[10] *See Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) (holding that when an attorney, as
an "agent," "is employed to represent a principal with respect to a given matter and acquires
knowledge material to that representation, for purposes of assessing the principal's rights and
liabilities vis-à-vis a third person[,] the agent's knowledge is imputed to the principal" (citing
*Restatement (Second) of Agency* §§ 9(3), 268, 272, 275 (1958))).

MPI's conduct violated that Order.  "In the context of civil contempt, clear and convincing evidence is interpreted to mean 'a quantum of proof adequate to demonstrate to a "reasonable certainty" that a violation has occurred.'"  *Levin v. Tiber Holding Corp*., 277 F.3d 243, 250 (2d Cir. 2002).  In this case, the record presented by IBM and MPI's own statements to the Court show, to a reasonable certainty, that, by authorizing the commencement of the New Action, with no factual basis for its substantive allegations other than information purportedly learned by Goldstein from his review of the Ricoh documents, MPI violated the terms of the Protective Order.

### C.   Whether MPI and/or Goldstein Made a Diligent Attempt To Comply With the Protective Order in a Reasonable Manner

Goldstein suggests that, regardless of whether he and/or MPI might be found to have violated the Protective Order, the Court should not make a contempt finding because he personally made a "careful effort" to comply with his "reasonable understanding of the October 13 Order and the use restriction in the Protective Order as construed therein."  (MPI Opp. Mem., at 19.)  If it had not been for its October 13 Order, this Court might have found this argument persuasive.  In light of this Court's unequivocal construction of the Protective Order, however, as prohibiting MPI from using the Ricoh documents to support the assertion of new claims in a second lawsuit, this Court cannot conclude that Goldstein's (or MPI's) subsequent, purported contrary understanding of the Protective Order was "reasonable."

MPI cites no cases in its opposition to IBM's contempt motion in which the alleged contemnor – with knowledge that it was being threatened with such a motion – sought clarification from the court as to whether it could proceed with impunity, was told in plain terms by the court that it could not, and then proceeded anyway.  In this case, as set out above, MPI, through Goldstein, was well aware that IBM was taking the position that, if MPI commenced a

new copyright lawsuit based on information produced in discovery in this action, then IBM

would likely seek to have MPI and/or Goldstein held in contempt.  It was expressly for this

reason that MPI asked this Court to "clarify" or, if necessary, modify the Protective Order, so as

to allow MPI to commence a new suit based on the Ricoh documents.  (*See* Dkt. 161, at 4-5

(Goldstein stating that "[t]he very reason" why MPI sought the Court's construction of the

Protective Order was "to obtain a clear determination before further litigation steps [were] taken

whether any steps by MPI in contemplation of new causes of action *based on information*

*gleaned from Ricoh-produced documents* constitute a violation of the Protective Order and a

contemptuous course of action" (emphasis added)); *see also* Dkt. 153, at 1-2 (MPI stating that it

"wish[ed] to submit an application to construe and/or modify the Protective Order, so that it may

be relieved of the spectre of an application for contempt sanctions, or, if IBM's position is

correct, so that the Court may instruct MPI to desist from the course of conduct that IBM

contends is contumacious").)

In its October 13 Order, this Court did not provide MPI with the ruling it sought.  Rather,

this Court held that the Protective Order unambiguously prohibited MPI from using the

documents produced in discovery in this action to support the assertion of copyright

infringement and potentially other claims against IBM, Ricoh or others in a new lawsuit.

(10/13/16 Order, at § I.)  Indeed, this Court reiterated this point several times in its decision.

(*See id.*, at § I(A) (finding that the plain language of the Protective Order "prohibit[ed] produced

material from being used to support the commencement of separate litigation"); *id.*, at § I(B)

(rejecting MPI's interpretation of case law, and again stating that the Protective Order, as

written, would not "allow for discovery material covered by its terms to be used to support newly

asserted claims in another action"); *id.*, at § I(C) (explicitly agreeing with IBM that MPI would

be "free to bring any valid, good-faith claim that [was] not based upon information produced in discovery in this case" (internal quotation marks and citation to IBM's brief omitted)); *id.*, at § I(D) (cautioning MPI that the "use of produced documents in new litigation . . . would be prohibited by the Protective Order in its present form"); *id.*, at § II (noting that "MPI may bring copyright claims against IBM or Ricoh in compliance with the Protective Order; it just may not use any documents obtained in discovery in this action to do so"); *id.*, at Conclusion (denying "MPI's application for 'clarification' or 'modification' of the Protective Order so as to enable MPI to use discovery obtained in this matter to support new claims against IBM, Ricoh, or others").)  By holding that MPI could not use produced Discovery Material to support the assertion of new claims in a new litigation, this Court was necessarily holding that Goldstein could not use his knowledge or recollection of the contents of such material as the basis for such claims.

While this Court acknowledges that a litigant should not be held in contempt for violation of an order, where, despite the violation, the litigant made good-faith efforts to comply with a reasonable understanding of the order at issue, this Court has not identified any precedent in which a non-compliant party was found to have had a "reasonable" understanding of a court order, after the court itself had already construed its order otherwise.  In *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993), for example, in which the Ninth Circuit – out of apparent concern for the breadth of a protective order's use restrictions – reversed a district court's finding of contempt, it certainly does not appear that the district court had previously set out its construction of the order in question, and the record, as described by

the circuit court, offered no reason to believe that the alleged contemnor had acted in bad faith.[11]

Further, in some cases in which courts have declined to make contempt findings, the particular

procedural history has made the accused party's professed understanding of an order seem more,

rather than less, reasonable.  For example, in *Halo Electronics, Inc. v. XFMRS, Inc*.,

No. 07-CV-06222 RMW, 2012 WL 1604858 (N.D. Cal. May 7, 2012), the court found that the

plaintiff should not be held in contempt for violating a protective order where, *inter alia*, the

parties had previously exchanged emails, in which it appeared that the defendant had stipulated

that the plaintiff could use documents produced in the action in a second litigation, *id*. at *1, *5

("[T]he court finds that plaintiff reasonably understood that the challenged disclosure was

allowed under the terms of the stipulation email.").  Here, in contrast, the procedural history of

this action renders incredible any assertion by MPI and Goldstein that they had a reasonable

belief that the Protective Order allowed them to use information gleaned from the Ricoh

documents to support the assertion of new claims, in a new litigation.

---

[11] The use restriction at issue in *Dual-Deck* contained the following language:  "All information produced in discovery, including, but not limited to, 'Confidential Information' shall be used solely in the preparation for trial and/or trial of this action, [and] *shall not be used at any time for any other purpose whatsoever* . . . ."  *Dual-Deck*, 10 F.3d at 694 (emphasis added).  The district court found that the plaintiff had taken three actions that were violative of this restriction and that justified a finding of contempt, including (1) referring, in a complaint in a subsequent action, to documents produced under the protective order, while not revealing the documents' contents, (2) moving, in the subsequent action, for an order prohibiting the destruction of evidence, and referencing in that motion, under seal, discovery from the original case, and (3) making a discovery request in the subsequent action that referred to discovery obtained in the original case.  *Id*.  Focusing particularly on the language of the use restriction emphasized above, the Ninth Circuit found that, "if taken literally, the order would be absurd," as it would require "lawyers who learn from and use their experience obtained in discovery . . . [to] have to change fields, and never do antitrust work again, lest they 'use' what they learned in a prior case '*in any way whatsoever*' in any 'other action.'"  *Id*. (emphasis added).  In light of these concerns, the circuit found that "the defendant [had] failed to prove by clear and convincing evidence that under a good faith, reasonable interpretation of the protective order, [the plaintiff] did not substantially comply with the order."  *Id*., at 695.

This Court also finds unpersuasive Goldstein's suggestion that, because he did not look at the Ricoh documents in drafting the Complaint in the New Action, or quote from or identify those documents, the allegations of that Complaint cannot be said to have been impermissibly "based on" the documents.  Goldstein has freely admitted that the factual basis of the new Complaint was derived solely from what he recalled having seen in the Ricoh documents, and it is thus obvious that the Complaint was based on those documents, regardless of whether the documents were sitting immediately in front of Goldstein at the time that he drafted the Complaint, and regardless of whether the Complaint quoted or identified the documents.  To the extent the factual allegations in MPI's new Complaint were made "on information and belief," MPI's "belief" could have been grounded in nothing other than information contained in the covered documents.  This Court finds troubling Goldstein's apparent argument that a use restriction like the one in the Protective Order in this case could be avoided merely by counsel's reading the documents subject to the restriction, and then setting the documents aside and using his recollection of the documents' contents for the prohibited purpose.  Especially as the Protective Order in this case restricts the use of "information" produced in discovery, and not only "documents" (*see* Protective Order ¶ 1 (defining covered Discovery Materials to include, *inter alia*, "any . . . information produced, given, or exchanged by and among the Parties and any non-parties to the Action, in connection with discovery in the Action")), Goldstein cannot so easily divorce the documents in question from the information contained therein.

In short, in the particular context of this case, where MPI requested that this Court confirm that, consistent with the Protective Order, it could use the Ricoh documents as the basis for commencing a new lawsuit, and, where this Court then confirmed the opposite, MPI was plainly on notice that using the *contents* of the Ricoh documents to support newly asserted

claims would be prohibited.  In these circumstances, this Court cannot find that MPI or Goldstein had a reasonable basis for believing their conduct was permissible.  Nor can this Court conclude that Goldstein made a "diligent attempt to comply" with the Protective Order, *see King*, 65 F.3d at 1058, merely because he did not look at, quote, or specifically reference the Ricoh documents in the new Complaint, when he admittedly relied on their contents in drafting the Complaint's factual allegations and then refused to respond to IBM's inquiries as to whether MPI had any basis for those allegations other than those documents.  Apparently, Goldstein hoped that he would not have to answer any questions about the underpinnings of the new Complaint until after discovery had commenced in the New Action, and the Ricoh documents had been produced anew.  Rather than reflecting diligent effort at compliance, such conduct reflects gamesmanship.

In addition, while a "diligent attempt to comply" does not necessarily require a party to seek leave of court before taking action, this Court again notes that, after it issued its October 13 Order, MPI made no effort to seek reconsideration of that Order and filed no appeal challenging this Court's conclusion that the Protective Order prohibited MPI from using the Ricoh documents to support the assertion of new claims.  MPI also did not immediately alert the Court to the fact that the New Action was based on information contained in the Ricoh documents.  To the contrary, upon commencing the New Action, MPI, through Goldstein, filed a misleading "Related Case Statement" summarizing this Court's October 13 Order as follows:

> The Magistrate Judge on October 14, 2016 entered an Order that
> provided inter alia that MPI may file a Related Case raising claims
> of the type herein asserted provided however that MPI may not use
> discovery material covered by the Confidentiality Stipulation and
> Protective Order in Case 15-cv-04891.

(Dkt. 3, in 16cv9161.)  Even apart from the fact that this Court never ruled, in its October 13 Order, that "MPI may file a Related Case" (*see* 10/13/17 Order, at § I(B) (pointing out that it

would be up to the Court to determine whether two cases were sufficiently "related" to warrant assignment to the same judge)), the clear suggestion of MPI's statement was that it had not used covered discovery material to support the claims made in the New Action, when, in fact, it had.

For all of these reasons, this Court certifies the findings set forth below, which, in this Court's view, would warrant holding both Goldstein and MPI in contempt.

## III.   <u>CERTIFICATION OF FACTS</u>

Based on the above, I hereby certify the following facts:

1.      The Protective Order in this contract case (Dkt. 44) clearly and unambiguously prohibited MPI from using documents or information obtained in discovery in this action, including from third parties pursuant to subpoena, for the purpose of supporting the assertion of new claims, in a new lawsuit.

2.      This Court issued an Order on October 13, 2016, holding that the Protective Order was unambiguous in this regard, and that it would be violative of the Protective Order for MPI to use the documents produced in discovery by third party Ricoh to support new claims against IBM, Ricoh, or others.

3.      MPI did not appeal this aspect of this Court's October 13, 2016 Order, nor did it seek reconsideration of that Order.

4.      MPI subsequently filed a New Action, asserting copyright infringement and other claims against IBM and another party.

5.      Goldstein, who drafted the Complaint in the New Action on behalf of MPI, has admitted that he had no basis for the substance of the new claims he included in that Complaint, other than the contents of the Ricoh documents.

6.      Goldstein's admission constitutes clear and convincing evidence that, in preparing the new Complaint for filing, and then proceeding to file it on MPI's behalf, Goldstein violated the Protective Order.

7.      MPI itself had notice of the Protective Order and of this Court's October 13, 2016 Order finding that the Protective Order unambiguously prohibited MPI from asserting new claims based on the Ricoh documents.

8.      The statements repeatedly made by Goldstein in this case that, in his view, documents produced by Ricoh would support copyright-infringement and other claims against IBM and others, coupled with the fact that MPI had no separate basis for the factual allegations made in the Complaint in the New Action, constitute clear and convincing evidence that MPI was aware that the Complaint was based on information Goldstein had viewed in the Ricoh documents.

9.      By authorizing the filing of the Complaint in the New Action, MPI itself violated the Protective Order.

10.     In light of the particular procedural history of this case – specifically MPI's request that this Court construe the Protective Order to clarify MPI's obligations thereunder, and this Court's subsequent issuance of an Order expressly informing MPI that it could *not* use the Ricoh documents to support new claims in a new lawsuit – neither MPI nor Goldstein could have had a reasonable understanding of the Protective Order that would have allowed them to proceed to use Goldstein's knowledge of the information contained in the Ricoh documents as the sole support for newly asserted claims.

11.     MPI and Goldstein did not make a diligent attempt to comply with a reasonable understanding of the Protective Order.

12.     No hearing is required for the Court to make these findings, as the facts set forth herein are evident from IBM's submissions and the various filings made by MPI, itself.

13.     These facts warrant a finding that both Goldstein and MPI are in contempt of court.

## IV.    <u>RECOMMENDATIONS</u>

If the Court proceeds to issue a contempt order based on the above certified findings, then this Court recommends that MPI be asked whether it wishes to assert reliance on advice of counsel in mitigation of punishment.  *See Musella*, 818 F. Supp. at 606-07.  If so, then a hearing should be held to inquire into the nature of the advice that MPI was given, and to determine whether sanctions on MPI should be adjusted accordingly.  This Court notes that, if MPI wishes to argue that, in authorizing the commencement of the New Action based on information covered by the Protective Order, it relied, in good faith, on Goldstein's advice that it would not thereby be violating the Protective Order, then MPI will necessarily waive attorney-client privilege as to its discussions with Goldstein on this subject.  *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (holding that a party's assertion of reliance on privileged advice of counsel effects a waiver of privilege).

In any event, should the Court find Goldstein and/or MPI in contempt, this Court respectfully makes the following recommendations as to sanctions, so as "to secure future compliance with court orders and to compensate the part[ies] that ha[ve] been wronged," *Cordius Trust*, 2009 WL 3416235, at *6 (internal quotation marks and citation omitted):

1.     MPI should be directed to withdraw the New Action, without prejudice to refile, should it, through investigation, develop support for its new claims from sources other than the documents covered by the Protective Order in this case.

2.     Goldstein (and/or MPI, depending on the extent of its good-faith reliance on Goldstein, should it wish to assert such reliance) should be ordered to pay the reasonable attorneys' fees and costs incurred by IBM, Ricoh, and Crawford (a) in connection with the contempt motion, and (b) in defending the New Action to date.

\* \* \*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lorna G. Schofield, United States Courthouse, 40 Foley Square, New York, New York 10007, Room 201, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Schofield. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        April 18, 2017

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

37

Copies to:

All counsel (via ECF)