**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MPI TECH A/S,<br><br>        Plaintiff,<br><br>    v.<br><br>INTERNATIONAL<br>BUSINESS MACHINES<br>CORPORATION,<br><br>        Defendant. | 15-cv-4891 (LGS) (DCF) |

**DEFENDANT INTERNATIONAL BUSINESS MACHINES CORPORATION'S
RESPONSE TO MARC J. GOLDSTEIN'S OBJECTION
TO CHIEF MAGISTRATE JUDGE FREEMAN'S APRIL 18, 2017
CERTIFICATION OF FACTS AND REPORT AND RECOMMENDATION**

**Table of Contents**

**PRELIMINARY STATEMENT** .................................................................................... **1**

**BACKGROUND** .................................................................................................. **2**

**ARGUMENT** ...................................................................................................... **6**

I. The Court Should Adopt The R&R As To MPI ........................................................... 6

II. Goldstein Is Not Entitled To A *De Novo* Hearing ...................................................... 6

III. The Court's Orders Are Clear And Unambiguous ...................................................... 8

IV. The Court Should Determine The Amount Of IBM's Reasonable Attorneys' Fees Based Upon Supplemental Briefing After The Contempt Order Is Issued ........................................ 11

**CONCLUSION** ................................................................................................. **13**

## **Table of Authorities**

*Caidor v. Onondaga Cnty.*, 517 F.3d 601 (2d Cir. 2008) .............................................................. 10

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. 2008) ....................................................... 14

*Doresett v. Cnty. of Nassau*, No. CV 10-01258 (ADS), 2012 WL 2076911 (E.D.N.Y. June 7,
    2012) ........................................................................................................................................ 12

*Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734 (2d Cir. 2000) ................................................. 11

*GMA Accessories, Inc. v. Eminent, Inc.*, No. 07CIV. 3219 (LTS) (DF), 2008 WL 2355826
    (S.D.N.Y. May 29, 2008) .......................................................................................................... 12

*Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) .................................................. 12

*Hammerle v. Hassfurther,* 20 F.3d 1171, 1994 WL 144870 (5th Cir. 1994) ................................ 10

*N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989) .................................... 12

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091 (2d Cir. 1993)  14

*SEC v. Credit Bancorp, Ltd.*, No. 99-cv-11395 (RWS), 2000 WL 968010 (S.D.N.Y. July 12,
    2000) ........................................................................................................................................ 10

*Speciality Ins. Co. v. QA3 Fin. Corp.*, 36 F. Supp. 3d 336 (S.D.N.Y. 2014) ................................ 10

**PRELIMINARY STATEMENT**

This matter comes before the Court in relation to Chief Magistrate Judge Freeman's Certification of Facts and Report and Recommendation ("R&R") that plaintiff MPI Tech A/S ("MPI") and it former counsel, Marc Goldstein ("Goldstein"), be held in contempt for violating this Court's unambiguous Protective Order.  *See* Dkt. 264.  Goldstein has filed an objection to the contempt recommendation, but MPI has not.  Accordingly, the Court should adopt Judge Freeman's recommendation at least with regard to MPI.

The Court should also adopt the recommendation with regard to Goldstein.  Although this case has traced a circuitous path to arrive at this point, the relevant facts are straightforward and conclusively demonstrate Goldstein's contempt.  Goldstein was bound by the Court's Protective Order to use on behalf of MPI discovery documents produced in this litigation exclusively for the purposes of prosecuting this case.  But Goldstein found documents in a third-party production that he wanted to use to file unrelated (and baseless) copyright infringement claims on behalf of MPI against Defendant International Business Machines ("IBM") and other parties.  Goldstein filed a formal motion seeking Judge Freeman's guidance as to whether MPI could do this without violating the Protective Order.  In response, she issued an order stating that the Protective Order is "unambiguous" and "plain" in "prohibit[ing] produced material from being used to support the commencement of separate litigation" and in prohibiting the "use [of] the documents produced in discovery . . . to support the assertion of copyright infringement and potentially other claims against those entities or others in a new lawsuit."  Dkt. 224 at 5, 6.  In short, Goldstein asked if MPI could use the documents to file a new case and Judge Freeman unequivocally answered "no."  Remarkably and inexplicably, Goldstein and MPI chose to ignore Judge Freeman's instructions and filed the copyright case anyway.  This presents the clearest case of contempt imaginable.

1

Goldstein (but not MPI) argues that this conduct should be excused because the Protective Order and Judge Freeman's subsequent order reaffirming the use prohibition were ambiguous. Judge Freeman correctly rejected these very same arguments on multiple occasions, finding them most recently to be "unpersuasive and disingenuous." Dkt. 264 at 19. Judge Freeman's detailed and thoughtful recommendation thoroughly addresses each of Goldstein's arguments. The many orders on the use prohibition could not be clearer. There simply is no ambiguity to be found. Therefore, Judge Freeman's R&R should be adopted.

## BACKGROUND

Judge Freeman's Orders of October 13, 2016; November 14, 2016; and April 18, 2017 provide a detailed overview of the history of MPI's and Goldstein's contempt. *See* Dkt. 224 at 2-5; Dkt. 235 at 2-4; and Dkt. 264 at 2-14. IBM here highlights a few key milestones.

MPI filed this case on June 23, 2015. *See* Dkt. 1. In October 2015, IBM sought and obtained MPI's stipulation to a protective order that was to "govern the use and handling of any documents . . . and any other information produced" in this case. Dkt. 44 ¶ 1; Dkt. 182 ¶ 2. The parties jointly requested that the Court enter the proposed protective order and the Court did so on October 19, 2015. Dkt. 44. Critically, the Protective Order provides that "[a]ll Discovery Material produced in the Action shall be used only for the purposes of prosecuting or defending the Action . . . ." *Id.* ¶ 2 (hereinafter the "Use Prohibition"); *see also* Dkt. 59 ¶ 3 (protective order amendment reiterating that MPI employees authorized to access Discovery Material "may use such documents and information only for the purposes of this litigation, as set forth in this Protective Order").

On April 4, 2016, MPI filed a motion seeking to use three privileged documents that were inadvertently produced by IBM as the basis to bring a new action against IBM and others for

2

copyright infringement and other claims.  Dkt. 125.  On May 16, 2016, Judge Freeman ruled that the documents were privileged and that MPI should return or destroy all copies.  Dkt. 163.

Undeterred, and in violation of Fed. R. Civ. P. 26(b)(5)(B), MPI's counsel used knowledge of the clawed-back documents to search through the document productions in this case for further evidence to support the purported copyright claims.  MPI's counsel found a few documents obliquely referencing copyrights in a production by third party Ricoh Print Solutions LLC ("Ricoh").  But these documents, like the privileged emails, were produced pursuant to the Protective Order and its Use Prohibition.

On May 23, 2016, MPI moved for clarification or modification of the Protective Order, seeking Judge Freeman's permission to use the Ricoh documents to support a separate, new case for copyright infringement against IBM and potentially also against Ricoh and Crawford Technologies, Inc. ("Crawford").  Dkt. 171.  Judge Freeman denied that application on October 13, 2016.[1]  Dkt. 224.  In particular, she held that "the plain language of the Protective Order dictates" that MPI would violate the Protective Order "if it were to use the documents produced in discovery, by IBM and/or Ricoh, to support the assertion of copyright infringement and potentially other claims against those entities or others in a new lawsuit."  *Id.* at 5.

Still undeterred, MPI on October 24, 2016, filed a motion for leave to file a Fourth Amended Complaint that would add the copyright claim to this case and possibly join Ricoh and Crawford as parties.  Dkt. 225.  Judge Freeman denied that motion as well.  Dkt. 235.  MPI filed an Objection to that order, which was overruled by this Court in its decision on IBM's motion for summary judgment.  *See* Dkt. 263.

---

[1] MPI initially sought this Court's review of that Order but later withdrew the challenge.  Dkt. 239.

3

Notwithstanding this history, on November 25, 2016, MPI filed a new complaint for copyright infringement and misappropriation of trade secrets against IBM and Crawford. *See* Dkt. 1 in Case No. 16-cv-09161 (S.D.N.Y.). After reviewing that complaint, IBM's counsel raised with Goldstein that the new complaint appeared improperly based on information obtained through discovery that was subject to the Protective Order in this case. Accordingly, IBM asked Goldstein on November 29, 2016 to identify the factual basis for that the new complaint (other than the Protective Order-covered documents MPI was prohibited from using). *See* Dkt. 251-08 in Case No. 16-cv-09161. Goldstein declined to do so. Dkt. 15 in Case No. 16-cv-09161 (letter brief filed by Goldstein on December 13, 2016, stating that "IBM also wanted a 'meet and confer' call in which I should explain the factual basis of the Complaint. I declined to do this."). In light of MPI's refusal to indicate the factual basis of the complaint, IBM's counsel informed Goldstein on November 30, 2016 that it was "considering a motion to dismiss and a motion for sanctions." Dkt. 251-10 in Case No. 15-cv-04891.

Although Goldstein now asserts that IBM should have moved for a stay of the copyright case in December 2016, *see* Goldstein Objection at 19, Goldstein and MPI pushed for IBM to file its response to that complaint quickly so that MPI could prosecute the new action. In particular, on December 13, 2016, MPI urged the Court to reject (in part) IBM's request for an extension of time to respond to the complaint in Case No. 16-cv-09161, arguing that IBM should be forced to file its motion by January 6, 2017, *see* Dkt. 15, when IBM had sought until January 25, 2017. *See* Dkt. 14.

Similarly, IBM proposed to MPI and Goldstein that the copyright case be stayed pending resolution of IBM's contempt motion. *See* Declaration of Daniel A. Zaheer ("Zaheer Decl."), Ex. 1 (E-mail correspondence between Marc G. Goldstein, Daniel A. Zaheer, Jonathan D. Cogan, and

4

Christopher P. Beall (Jan. 19, 2017) (IBM counsel "ask[ing] that MPI reconsider IBM's proposal that Case 16-09161 be stayed pending the resolution of the contempt and sanctions motion in Case 15-04891" and noting that "such a stay could save the parties from incurring substantial unnecessary costs associated with briefing motions to dismiss as well as litigating other issues that may arise in Case 16-09161."). MPI and Goldstein did not agree to such a stay and IBM proceeded with filing its motion to dismiss and/or strike the copyright case on January 25, 2017. *See* Dkt. 33.

On January 9, 2017, IBM filed a motion to hold MPI and/or Goldstein in civil contempt and for sanctions in this case on the grounds that the complaint in Case No. 16-cv-09161 was based on Discovery Material produced pursuant to the Protective Order in this case, which unambiguously prohibited MPI from using that information to file a new complaint. *See* Dkt. 259 in Case No. 15-cv-04891. On January 12, 2017, Judge Freeman issued an order directing MPI "to submit a sworn affidavit or declaration under penalty of perjury from its counsel, stating whether any documents designated as 'Confidential' or 'Highly Confidential' under the Protective Order in this case, and produced in discovery in this case by either IBM or any non-party pursuant to that Protective Order, were used, in any way, in connection with MPI's commencement of a new action in this Court, titled *MPI v. IBM, et al.,* 16-cv-9161 (KBF)." Dkt. 256 at 2. On January 26, 2017, MPI filed its opposition to the contempt motion and the required affidavit by Goldstein. *See* Dkt. 260; Dkt. 261.[2]

On April 18, 2017, Judge Freeman issued an R&R on the contempt motion, in which she "(1) certif[ied] to [this Court] certain facts that would justify a finding that Goldstein and MPI are

---

[2] Separate from the proceedings related to MPI's and Goldstein's violation of the Protective Order, on February 6, 2017, this Court issued a decision granting IBM's motion for summary judgment on all of MPI's claims and denying MPI's motion to amend its pleading to add copyright infringement claims. *See* Dkt. 263.

5

in contempt, and (2) recommend[ed] that, based on these certified facts, the Court make contempt findings and impose appropriate sanctions." Dkt. 264 at 1.

Goldstein moved to withdraw as MPI's counsel on May 3, 2017, *see* Dkt. 267, which the Court granted on May 9, 2017. *See* Dkt. 274. On May 25, 2017, Goldstein filed an objection to Judge Freeman's R&R in his individual capacity as a putative contemnor. *See* Dkt. 276-1 ("Goldstein Objection"). MPI did not file an objection to the R&R.

## ARGUMENT

### I.     The Court Should Adopt The R&R As To MPI

MPI has not filed an objection to the R&R, despite the opportunity to do so and the clear warning of Judge Freeman to file any objection within 14 days. *See* Dkt. 264 at 37. Accordingly, MPI has waived all objections to the R&R and the Court should adopt the R&R as against MPI. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("In general, failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.") (quotation marks and citations omitted).

### II.    Goldstein Is Not Entitled To A *De Novo* Hearing

Goldstein argues that he is entitled to a *de novo* hearing before the District Court so that all of the evidence carefully considered by Judge Freeman can be reevaluated and re-weighed by this Court. Goldstein Objection (Dkt. 276-1), at 5-7. But a putative contemnor has "no absolute right" to an evidentiary hearing, even if he requests one. *See SEC v. Credit Bancorp, Ltd.*, No. 99-cv-11395 (RWS), 2000 WL 968010, at *8 (S.D.N.Y. July 12, 2000). A court need not hold a hearing "where additional procedures would be meaningless, such as where there is no real factual dispute." *Id.*

There is no factual dispute here. It is undisputed that the sole basis for the copyright complaint in Case No. 16-cv-09161 was Discovery Material produced pursuant to the Protective Order in this case. The only issue disputed by Goldstein here is whether the Protective Order was "clear and unambiguous" in barring MPI and him from using Discovery Material in the way he indisputably used it. That is a pure question of law that requires no hearing to be resolved. *See, e.g.*, *Hammerle v. Hassfurther*, 20 F.3d 1171, 1994 WL 144870, at *2 (5th Cir. 1994) (unpublished) ("Whether an agreed order is ambiguous . . . is a question of law."); *see also Catlin Speciality Ins. Co. v. QA3 Fin. Corp.*, 36 F. Supp. 3d 336, (S.D.N.Y. 2014) ("[W]hether the contract is ambiguous is a question of law for the court."); *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2000) (explaining that contract law principles apply to the construction and enforcement of stipulated orders).

Nor has Goldstein provided any indication of what additional evidence he would present to the Court if he were granted a full hearing. *See Credit Bancorp*, 2000 WL 968010, at *8 (finding that the record did not merit a further hearing on contempt where the putative contemnor had "not submitted evidence in support of [his factual] contention" and "made no offer of proof as to what additional evidence he would offer through an evidentiary hearing that he cannot offer now in the form of affidavits or other documentary evidence"). Instead, Goldstein obliquely notes that he is "[r]eserving the presentation of evidence to that hearing" and insinuates that Judge Freeman's discussion of this case's lengthy procedural history is somehow "highly prejudicial." Goldstein Objection at 6.

Although the precise contours of this supposed prejudice are unclear, in a footnote Goldstein notes that his filing of "an All Writs Act injunction application in error as a motion addressed to Judge Freeman . . . was a procedural oversight, not an act of misconduct." *Id.* at 6-7

7

n.3.  He then claims that "this matter had no place in a proper Certification of Facts on IBM's contempt motion," "[e]xcept as a way to prejudice the district court against MPI and its former counsel."  *Id.*  But there is no mention of this procedural oversight in Judge Freeman's Certification of Facts.  *See* Dkt. 264 at 34-36.  Rather, it appears in the middle of her lengthy recitation of this case's complicated procedural history.[3]  *See id.* at 7.   Regardless, there is no reason why a mere reference in Judge Freeman's R&R to a procedural misstep by Goldstein constitutes unfair prejudice to a putative contemnor such that this Court should hold a *de novo* hearing to address it.

### III. The Court's Orders Are Clear And Unambiguous

Goldstein argues that Judge Freeman's October 2016 Order—which interpreted the Protective Order at issue in this proceeding—was somehow ambiguous because it "left uncertainty in [his] mind" regarding the scope of prohibited conduct under the Protective Order.  Goldstein Objection at 8.  This argument ignores the clear and unambiguous text of the Protective Order, as well as Judge Freeman's October 2016 Order issued in response to MPI's motion to "clarify" or "modify" the terms of the Protective Order.

A "'clear and unambiguous order' is one 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'"  *Doresett v. Cnty. of Nassau*, No. CV 10-01258 (ADS), 2012 WL 2076911, at *7 (E.D.N.Y. June 7, 2012) (quoting *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989)); *see also Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 143 (2d Cir. 2014) ("[U]nless the parties can ascertain from the four corners of the order precisely what acts are forbidden, the order cannot form the basis for contempt.")

---

[3] Specifically, Judge Freeman made the following observation: "On May 16, 2016, MPI then attempted to file a motion in this Court under the All Writs Act . . . seeking an injunction 'to protect this Court's exclusive jurisdiction to construe the Protective Order' by preventing Ricoh from pursuing its motion in Colorado. . . .  Goldstein, however, did not properly file MPI's All Writs Act motion (*see* Dkt. 161), resulting in the motion being terminated administratively on May 20, 2016."  Dkt. 264 at 6-7.

8

(internal quotation marks and citation omitted).  But a "clear and unambiguous order" need not spell out "every conceivable example" of "prohibited conduct."  *GMA Accessories, Inc. v. Eminent, Inc.*, No. 07CIV. 3219 (LTS) (DF), 2008 WL 2355826, at *3 (S.D.N.Y. May 29, 2008).

The plain language of the Protective Order makes clear that Discovery Material cannot be used to initiate a separate complaint.  Under the Protective Order, "[a]ll Discovery Material produced in the Action shall be used only for the purposes of prosecuting or defending the Action, and shall not be disclosed to any person except in accordance with the terms hereof."  Dkt. 44 ¶ 2 (hereinafter the "Use Prohibition").  An amendment to the Protective Order later reiterated that MPI employees authorized to access Discovery Material "may use such documents and information only for the purposes of this litigation, as set forth in this Protective Order."  Dkt. 59 ¶ 3.  The plain meaning of the term "use" is to employ or apply.[4]  This language makes clear that the "use" of Discovery Material to file a separate complaint is not permitted.

In her October 13, 2016 Order, Judge Freeman explained that "[t]he Terms of the Protective Order Are Unambiguous."  Dkt. 224 at 5.  Indeed, in response to MPI's request for "clarification" that the Protective Order could be read to permit MPI's separate copyright suit, Judge Freeman stated that "[t]his Court cannot provide the 'clarification' MPI seeks, as the plain language of the Protective Order dictates otherwise."  *Id.*  Judge Freeman continued that "the plain language of the Protective Order states . . . that '[a]ll Discovery Material produced in the Action shall be used only for the purposes of prosecuting or defending the Action,' and courts have consistently interpreted this type of language to prohibit produced material from being used to support the commencement of separate litigation."  *Id.* at 6.  Judge Freeman explained that "the plain language of the Protective Order does not support the interpretation that MPI would urge

---

[4] *See, e.g.*, *Black's Law Dictionary* (10th Ed. 2014) (defining "use" as "[t]o employ for the accomplishment of a purpose; to avail oneself of").

9

upon the Court." *Id.* at 8.  And Judge Freeman directly warned MPI that even action taken "to prepare for the potential use of produced documents in new litigation . . . would be prohibited by the Protective Order . . . ." *Id.* at 13-14.

The plain language of the Protective Order—as further elucidated by the October 2016 Order—leaves no room for Goldstein to argue ambiguity.  As Judge Freeman held in her R&R, her October 13, 2016 Order "examined – and rejected – every argument raised by Goldstein" regarding the scope of the Protective Order and whether, based on its unambiguous Use Prohibition, "MPI could . . . use the Ricoh documents to support the assertion of copyright infringement and potentially other claims against IBM or others in a new lawsuit, without violating the Protective Order."  Dkt. 264 at 18.  There can be no doubt as to "precisely what acts are forbidden"; the Protective Order unambiguously prohibited Plaintiff from using information acquired via discovery in this case to support a complaint in a separate action.  *Gucci America*, 768 F.3d at 143 (internal quotation marks and citation omitted); *see also Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 292 (2d Cir. 2008) ("[The] proper measure of clarity . . . is not whether the decree is clear in some general sense, but whether it unambiguously proscribes the challenged conduct.").

Goldstein claims that the October 2016 Order interpreting the Protective Order was ambiguous because it was unclear whether he would violate the Protective Order by "applying his knowledge of the contents of the use-restricted documents in drafting the Copyright Complaint, but without exposing the contents or even the existence of those documents in that Complaint . . . ."  Goldstein Objection at 8.  As an initial matter, Judge Freeman eviscerated this argument in her R&R.  *See* Dkt. 264 at 19-21.  Further, and in any event, Goldstein's reading of the relevant orders is not colorable.  The Protective Order not only prohibits improper disclosures of Discovery

10

Material (as Goldstein suggests), but it also contains a separate prohibition on improper *uses* of that material:

> All Discovery Material produced in the Action shall be used only for the purposes of prosecuting or defending the Action, *and* shall not be disclosed to any person except in accordance with the terms hereof.

Dkt. 44 ¶ 2 (emphasis added).  Goldstein bases his purported uncertainty on an improper attempt to collapse these two separate prohibitions (on use *and* disclosure) into a single one.  This is not permitted under the most basic canon of construction.  *See, e.g.*, *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (Courts must "safeguard against adopting an interpretation that would render any individual provision superfluous.").

Judge Freeman's October 2016 Order further explained that the Use Prohibition "prohibit[s] produced material from being used *to support* the commencement of separate litigation." Dkt. 224 at 6 (emphasis added).  And Judge Freeman rejected MPI's attempt to limit the Use Prohibition to "refer[] only to the public disclosure . . . of such information." *Id.* at 8.  Given the clear language of the Protective Order and Judge Freeman's subsequent pronouncements regarding that clear language, Goldstein cannot now legitimately claim that the Use Prohibition is solely a limitation on disclosing confidential information.

The remainder of Goldstein's arguments merely rehash the legal arguments already made to Judge Freeman and should be rejected for the same reasons stated in her R&R.  *See* Goldstein Objection at 11-15.

### IV. The Court Should Determine The Amount Of IBM's Reasonable Attorneys' Fees Based Upon Supplemental Briefing After The Contempt Order Is Issued

IBM agrees with Goldstein that the Court need not now determine the amount of legal fees IBM is entitled to recover.  Rather, the Court should calculate IBM's reasonable attorneys' fees

based upon supplemental briefing to be submitted after the Court issues an order of contempt. *See* Goldstein Objection at 19.

Goldstein is incorrect, however, in attempting to place the blame on IBM for the accumulation of these legal fees. First, all legal fees incurred by IBM in connection with litigating the contempt motion and defending Case No. 16-cv-09161 were justified by the need to protect against MPI's baseless complaint, the very filing of which is the subject of this contempt proceeding.

Second, as set forth in the background section above, IBM actually sought to limit costs associated with defending against the copyright complaint by proposing that the parties agree to stay that case pending resolution of the contempt motion. MPI rejected this effort, forcing IBM to proceed to defend itself in that case and incur substantial legal fees in the process.

## **CONCLUSION**

For the foregoing reasons, IBM respectfully requests that the Court should overrule Goldstein's Objection and adopt Chief Magistrate Judge Freeman's April 18, 2017 R&R.

Dated: June 6, 2017  Respectfully submitted,
New York, New York

**KOBRE & KIM LLP**

*/s/ Jonathan D. Cogan*
Jonathan D. Cogan
800 Third Avenue
New York, NY 10022
Tel: (212) 488-1200
Fax: (212) 488-1220
Email: jonathan.cogan@kobrekim.com

Daniel A. Zaheer (admitted *pro hac vice*)
150 California Street, 19th Floor
San Francisco, CA 94111
Tel: (415) 582-4800
Fax: (415) 582-4811
Email: daniel.zaheer@kobrekim.com

*Attorneys for Defendant*
*International Business Machines Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 6th, 2017, service of the foregoing document was made to all counsel of record via ECF.

Dated: June 6, 2017                                   */s/ Daniel A. Zaheer*____

                                                            Daniel A. Zaheer
                                                            Kobre & Kim LLP
                                                            150 California Street, 19th Floor
                                                            San Francisco, CA 94111
                                                            Tel: (415) 582-4800
                                                            Fax: (415) 582-4811
                                                            Email: daniel.zaheer@kobrekim.com